**Francesco CLEMENTE, Plaintiff,**

v.

**FARRELL LINES INCORPORATED and Universal Maritime Services, Inc., Defendants.**

**No. 78 C 1314.**

United States District Court, E. D. New York.

Feb. 23, 1979.

Irving B. Bushlow, Brooklyn, N. Y., for plaintiff by Theodore W. Bushlow, Brooklyn, N. Y.

Lilly, Sullivan & Purcell, New York City, for defendant Farrell Lines, Inc. by Thomas E. Stiles, New York City.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

This action was brought by plaintiff in State court against defendant Farrell Lines Incorporated ("Farrell"), the owner of the SS African Comet, and an independent stevedore, Universal Maritime Services, Inc.

("Universal"), for injuries plaintiff allegedly sustained while working on the vessel as a cargo lasher in the employ of Frank J. Holleran Corporation ("Holleran"), which is not a party to this action. Farrell removed the case to this court on the ground of diversity of citizenship. It now moves for summary judgment pursuant to Rule 56, F.R.Civ.P., based upon plaintiff's deposition and undisputed facts, which it contends entitles it to judgment as a matter of law under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.* ("LHWCA"). For the following reasons, defendant Farrell's motion is granted.

The undisputed facts reveal that on July 18, 1975, plaintiff was working aboard the African Comet lashing cargo at various hatches under the direction of his employer, Holleran. At approximately 9 p. m., he was assigned by his employer to lash cargo in the upper deck of the No. 4 hatch. According to plaintiff, he was injured when a container near which he was working was pushed against him by another container being carried on a hilo operated by an employee of the co-defendant stevedore, Universal.

Farrell contends there is no evidence in the record upon which plaintiff can state a claim of negligence against the vessel owner under the 1972 amendments to the LHWCA. It claims that No. 4 hatch was not under the control of Farrell and cites *Napoli v. Hellenic Lines,* 536 F.2d 505 (2 Cir. 1976); *Munoz v. Flota Mercante Grancolombiana, S.A.,* 553 F.2d 837 (2 Cir. 1977); *Cox v. Flota Mercante Grancolombiana, S.A.,* 577 F.2d 798 (2 Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 222, 58 L.Ed.2d 195 (1978), for the proposition that the 1972 amendments to the LHWCA eliminated any non-delegable duty by a shipowner to provide an employee with a safe place to work.

Plaintiff opposes Farrell's motion with a brief attorney's affidavit contending that there are genuine triable issues of material fact based upon, at least, two theories of the vessel's negligence. First, it is claimed that there is a question whether the defend-

ant vessel fulfilled its obligation to provide sufficient lighting at the time of the accident's occurrence at 10:00 p. m. Second, it is suggested that the hatch at the time of the accident was overcrowded with men, cargo, material and equipment.

After careful review of the parties' submissions, the court is of opinion that plaintiff has failed to show the existence of any genuine triable issue of material fact which would bar summary judgment in favor of Farrell. On the contrary, plaintiff's own statements after the accident and in his later deposition conclusively establish that the sole proximate cause of the accident and his injury was the act of a fellow worker in the hatch. In an "Employee's Claim for Compensation" form he signed two or three months after the occurrence, plaintiff furnished the following description of the accident:

"While at work in hatch, lashing, a longshoreman operating a hi-lo machine struck me from behind."

In his deposition signed and sworn to August 14, 1978, plaintiff expanded the foregoing description and admitted that other longshoremen in the hatch "told me it was the machine," referring to the hilo. The additional details he provided, however, indicate the manner in which he claims the accident happened and eliminate any possibility of negligence on the part of the vessel.

Agreeing that a sketch, Exh. C for identification on the deposition, accurately depicted the scene just before his injury, plaintiff testified he was standing between a container and the offshore bulkhead in the No. 4 hatch. The container, 20 feet long and 8 feet high, had been pushed into position athwart the forward end of the square, the right end projecting some distance under the wing on the offshore side of the vessel. Plaintiff estimated there was a 2-foot space between the bulkhead and the end of the container. He was in that space facing the bulkhead attempting to hook up the lashing wire, so as to fasten the forward corner of the container to the bulkhead, when the container moved forward and struck him.

According to plaintiff one row of two or three containers had already been placed across the forward end of the hatch to form a barrier for drums and other cargo which had been stowed against the forward bulkhead. The container plaintiff was working on was the first in a second row of containers to be placed at that end of the hatch. He knew that additional containers were being loaded into the hatch to complete the row. Based on his own testimony as to how the accident happened and what he was told by the longshoremen working in the hatch, it is clear that a hilo operator in attempting to place another container in the row bumped the container next to plaintiff, causing it to strike him and thereby inflict the injuries claimed.

■ In such circumstances, plaintiff's contention that he should nonetheless be permitted to continue this action in order to ascertain whether he can prove negligence on Farrell's part wholly ignores the 1972 amendments to the LHWCA. In language too plain to be misread, the LHWCA now provides that

"no such action [by 'a person covered under this chapter'] shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel." 33 U.S.C. § 905(b).

Based on plaintiff's own testimony, aside from any lack of care on his own part, there is no way in which his injury can be attributed to anyone other than the longshoreman hilo operator. The operations under way in the hatch were entirely under the control of the independent contractors. No one connected with the vessel's command or crew were present in the hatch between 9:00 and 10:00 p. m., nor should there have been. As pointed out in *Munoz v. Grancolombiana, S.A., supra* at 840:

"The shipowner had *no duty to supervise* the minute details of work totally entrusted to the competence of the stevedore. Indeed, commercial reality and applicable union regulations preclude a rule that would require a non-expert constantly to intrude on the work of a master

stevedore in the deepest recesses of the ship."

Rule 56(c), F.R.Civ.P., provides that the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Second Circuit has only recently reaffirmed the principle that once the movant has adequately supported his motion,

"an adverse party may not rest upon mere conclusory allegations or denials. The party opposing the motion must set forth 'concrete particulars,' *Dressler v. MV Sandpiper*, 331 F.2d 130, 133 (2 Cir. 1964), and cannot make a secret of his evidence, holding it close to his chest until the trial. *See Donnelly v. Guion*, 467 F.2d 290, 291 (2 Cir. 1972). It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to the motion. *Id.* at 293. *See Applegate v. Top Associates, Inc.*, 425 F.2d 92, 96 (2d Cir. 1970)." *SEC v. Research Automation Corp.*, 585 F.2d 31 at 33 (2 Cir. 1978).

In an effort to avert summary judgment, plaintiff's attorney has submitted an affidavit asserting "there is a sharp question as to whether there was sufficient lighting at the time and place of this accident," and that "there were overcrowded conditions of men, cargo, material and equipment in the hatch," both of which are claimed to have been a proximate cause and substantial factor in bringing about plaintiff's injuries. Such an affidavit is obviously not based on personal knowledge of the affiant, it contains no facts that would be admissible in evidence, and it does not show affirmatively that the affiant is competent to testify to the matters stated therein, all of which are requisite under Rule 56(e), F.R.Civ.P. On that ground alone, plaintiff's opposition to the motion could be rejected.

But there are more substantial grounds, as to which *Munoz, supra,* is instructive. As there pointed out, 553 F.2d at 839:

"The shipowner's responsibility for maritime accidents cannot follow from mere invocation, without more, of the talismanic claim of 'negligence.' Congress by its extensive overhaul of the LHWCA in 1972, sought to achieve several goals: adequate, increased and sure compensation for injured longshoremen, elimination of the rubric of liability without fault for shipowners, *and encouragement of safety within the industry by placing the duty of care on the party best able to prevent accidents.*" (Emphasis supplied.)

Here, as previously noted, the party or parties best able to prevent accidents, were the independent contractors who were in complete control of No. 4 hatch and the stowage operations in process. Any alleged defect of lighting or overcrowding should have been noted and remedied by them, not by absent ship personnel. To assert that this was a responsibility of the vessel in such circumstances is simply to seek to reinstate pre-1972 liability without fault which the amendments of the LHWCA were designed to correct. The assertion, moreover, is all the more incongruous in view of the plaintiff's following testimony:

"Q. Did you make any complaints about lighting conditions?

"A. No.

"Q. And was the lighting adequate for the work that you were performing?

"A. Yes, for the work that I was going to do the light was discrete enough. It wasn't too much and it wasn't too little." Deposition at 13.

The claim of overcrowding is also drained of substance in light of plaintiff's further testimony that "[t]he square was empty, free, because they were sending down containers;" that non-container cargo was already stowed in the extreme forward end of the hatch and the wings; and that four or five lashers and not more than a gang of longshoremen were working the hatch. The only equipment referred to was the hilo and two clusters of lights illuminating the square.

Plaintiff having failed to come forward with any convincing facts or reasons showing that there is a genuine material issue of fact requiring a trial, defendant Farrell's motion for summary judgment dismissing the complaint as against Farrell is granted. Settle judgment on five (5) days notice.

SO ORDERED.