[No. 45878.   En Banc.   February 14, 1980.]

BARBARA D. HOJEM, *Petitioner*, v. JOHN KELLY,
ET AL, *Respondents*.

*Oberquell & Ahlf* and *Argal D. Oberquell,* for petitioner.

*Brothers & Coyne* and *Curtis J. Coyne,* for respondents.

Hicks, J.—Petitioner, Barbara Hojem, brought a personal injury action in King County Superior Court against the owners of Kelly's Riding Stables which resulted in a jury verdict in her favor. The trial court granted the Kellys' motion for judgment n.o.v. Hojem appealed and the Court of Appeals, Division One, by a divided court, affirmed the trial court. *Hojem v. Kelly,* 21 Wn. App. 200, 584 P.2d 451 (1978). We granted discretionary review and we affirm.

## ISSUE

In her petition to this court for discretionary review, Hojem phrases the issue as follows:

> The plaintiff was a paying customer at the defendants' commercial riding stables. The plaintiff fell off her horse on the defendants' premises and sustained a fractured vertebra while being chased by a riderless horse that was being boarded by the defendants and was under the defendants' care and control and was a "stalled" horse. The primary question is whether the defendants' failure to warn of the danger of riderless [horses] in the riding areas and defendants' failure to take any precautions to prevent riderless horses from intermingling in the riding areas constitutes negligence.

The determinative question on appeal is whether the trial court erred in granting defendants' motion for a judgment n.o.v. There is little controversy over applicable law and, as noted by the dissenting judge in *Hojem,* the only issue is whether there was sufficient evidence of defendants' negligence to support the verdict. In retrospect, this may well be a case of a petition for discretionary review improvidently granted.

## STANDARDS FOR JUDGMENT N.O.V.

■ A motion for a judgment n.o.v. should not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict. All evidence must be viewed in the light most favorable to the party against whom the motion is made. *Grange v. Finlay,* 58 Wn.2d 528, 364 P.2d 234 (1961). There must be "substantial evidence" as distinguished from a "mere scintilla" of evidence, to support the verdict—*i.e.,* evidence of a character "which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." A verdict cannot be founded on mere theory or speculation. *Arnold v. Sanstol,* 43 Wn.2d 94, 98, 260 P.2d 327 (1953).

## ELEMENTS OF NEGLIGENCE ACTION

■ Hojem claims that the Kellys negligently failed to warn her of and insulate her from riderless horses.[1] To recover damages for negligence, plaintiff must prove the existence of a duty owed to her by defendants and a breach of that duty which is a proximate cause of the resulting injury. *LaPlante v. State,* 85 Wn.2d 154, 159, 531 P.2d 299 (1975). "The standard must be one of conduct, rather than of consequences." W. Prosser, *Law of Torts* § 31, at 146 (4th ed. 1971).

■ The trial court gave but a single unchallenged instruction on the Kellys' duty to Hojem:

> The operator of a riding stable owes to a person who has an express or implied invitation to come upon the premises in connection with that business a duty to exercise ordinary care for his or her safety.

The only other guidance from the trial court was general definitions of negligence and ordinary care. A trial court's unchallenged instructions become the law of the case

---

[1]Hojem makes no claim that Babe, her rented horse, was unsuitable. Thus, cases predicating liability on a theory of implied warranty of suitability are inapposite. *See, e.g., Dam v. Lake Aliso Riding School,* 48 P.2d 98 (Cal. Dist. Ct. App. 1935), *aff'd,* 6 Cal. 2d 395, 57 P.2d 1315 (1936).

(*Arnold v. Sanstol, supra*) subject, however, to the threshold test that there be sufficient evidence to take the case to the jury in the first instance. *Walsh v. West Coast Coal Mines, Inc.,* 31 Wn.2d 396, 415–16, 197 P.2d 233 (1948).

Here, the trial judge had determined there was not sufficient evidence to go to the jury when, at the close of the case, he stated in ruling on Kellys' motion for a directed verdict:

> I agree with you. I think the case should be dismissed right here and now. But I am going to let the jury have it anyway, and if they should award her anything, then I would take it away from the plaintiff and then let an Appellate Court decide, because that would save the county money because they wouldn't have to go through the four days that we have gone through already in trial.

### EVIDENCE

Hojem had been a regular patron for 16 to 17 months at the Kelly stables, riding on its various trails and fields. She testified that she had ridden in the presence of riderless horses on previous occasions. Hojem was currently taking lessons in English riding techniques and on the day of the accident, she and a friend rented horses from the stables to practice for an hour. They rode to an empty enclosed riding field to practice. After approximately 45 minutes, a riderless horse appeared in the field. That horse, a gelding, was being boarded and "stalled" at the Kelly stables. There is no evidence as to how the riderless horse, Midnight, got out of its stall and into the field where Hojem was riding. The only evidence is that Midnight approached "Babe", the horse Hojem was riding; Babe began to run and Midnight followed or ran alongside.

There was no evidence that Midnight had exhibited dangerous or vicious propensities.[2] Rather, such evidence as was adduced on this point positively stated the horse had

---

[2]Petitioner emphasizes that Midnight was a "stalled" horse. There is no evidence it was stalled because of vicious propensities, rather the owner preferred to stall Midnight to keep the horse clean.

no such proclivities. Thus, cases imposing liability for injuries inflicted by an animal which the keeper knew or should have known was dangerous, are inapposite. *See, e.g., Gunderson v. Bieren,* 80 Wash. 459, 462, 142 P. 685 (1914). Mrs. Kelly did testify that horses sometimes nipped each other and conceded that in the past a horse on her premises may have attempted to bite a horse with a rider. Nevertheless, there was no testimony that Midnight nipped or attempted to nip Babe when Hojem was riding her.

In the course of cross–examination, Mrs. Kelly was asked, "Did you take any precautions at all to keep the riderless horses out of the areas where the horses were being ridden?" She responded, "As a rule we chased them out because they can be a nuisance as people are riding and other horses are eating." Again, Mrs. Kelly was asked, "And what was your procedure as far as having riderless horses in there when you were giving instructions?" Her answer, "If they wandered into the area where I was teaching, I would shoo them away." We find nothing upon which to predicate negligence in these questions and answers.

We have reviewed the evidence set forth by the dissenting judge in the Court of Appeals in support of the jury's verdict. At best, Hojem presented a "mere scintilla" of evidence that the Kellys had subjected her to an unreasonable risk of harm by failing to warn her of and insulate her from a riderless horse on this occasion. She had been a regular rider for months on the stable's various trails and fields. She produced no testimony, expert or otherwise, regarding the standard of conduct for operators of riding stables. The paucity of the evidence at the close of the case left to the jury only conjecture and speculation as a basis for concluding that the Kellys breached the duty of reasonable care to Hojem.

We agree with the trial court and the majority of the Court of Appeals that there was insufficient evidence to establish negligence on the part of the Kellys and the case should not have been submitted to the jury. To hold to the

148

contrary would indeed be focusing upon the consequences rather than the conduct before the event.

Affirmed.

UTTER, C.J., ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., and HAMILTON, J. Pro Tem., concur.