[No. 49694–3.    En Banc.    April 15, 1984.]

CLAY COWSERT, ET AL, *Respondents*, v. CROWLEY
MARITIME CORPORATION, ET AL, *Appellants.*

*Detels, Madden, Crockett & McGee, Robert H. Madden,* and *Jane I. Fantel,* for appellants.

*Charles A. Kimbrough, R. Franklin Wohlford, Philip A. Talmadge,* and *Pamela Grace Rapp* (of *Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S.*), for respondents.

DIMMICK, J.—Appellants, Puget Sound Tug & Barge Co. (PST&B) and Crowley Maritime Corp., appeal from a jury verdict awarded respondent Clay Cowsert under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.,* for injuries suffered in a work accident.[1] Appellants maintain that the verdict was a result of the trial court's failure to properly instruct the jury as to the duty of care owed Cowsert by appellants under the LHWCA. Appellants argue that an application of the correct standard of care to the facts of this case would have entitled them to a directed verdict or judgment n.o.v. We agree, and accordingly reverse the trial court and order the case dismissed.

## I

Clay Cowsert was a night shift foreman employed by Duwamish Shipyard, Inc. (Duwamish), an independent contractor hired by PST&B, the operator of Terminal 105 on the Duwamish Waterway in Seattle, to do certain weld-

---

[1]33 U.S.C. § 905(b) provides that, in the event of injury to a person covered by the Longshoremen's and Harbor Workers' Compensation Act caused by the negligence of a "vessel", such person may recover against such vessel as a third party. It is beyond dispute that Cowsert's injuries are under the jurisdiction of the LHWCA.

ing and repair work on PST&B's barges. Mr. Cowsert's crew was assigned to work aboard the *Agattu* on October 18, 1976, the night of the accident. The *Agattu* was moored next to the dock, as was the general practice for barges that were to be worked on. Another barge, barge 418, was tied to the outboard side of the *Agattu* with some slack in the lines so that the barges would not damage each other. This was apparently the standard procedure for mooring barges side by side. The lines could be tightened, if the need arose, by one man. Barge 418, unlike the *Agattu,* was not lighted.

Mr. Cowsert and his crew boarded the *Agattu* around 4:20 p.m. on the day of the accident to begin work. All PST&B employees had left Terminal 105, as their day shift had ended. Sometime between 9:30 and 10:30 p.m., Cowsert stepped over to barge 418 with a flashlight. While Cowsert was on barge 418, his flashlight dimmed considerably. On the way back to the *Agattu,* Cowsert walked off the edge of barge 418, which had drifted a few feet away from the *Agattu,* and fell into the water. He was rescued by fellow workers.

Cowsert testified at trial that he had been told by a PST&B employee that work would soon begin on barge 418, and that he was going over to barge 418 on his own initiative to see what needed to be done. Cowsert acknowledges, however, that no work was to be done by his crew on barge 418 the night of the accident.

Indeed, in the days following Cowsert's accident, Duwamish employees worked approximately 300 man-hours to complete the work on the *Agattu* prior to beginning repair work on barge 418. Work on barge 418 was not begun until 3 days after Cowsert's accident.

Cowsert brought a negligence action against PST&B as a third party vessel under 33 U.S.C. § 905(b). After presentation of evidence, PST&B's motion for directed verdict was denied. PST&B's proposed instructions to the jury on the duty of care owed Cowsert under 33 U.S.C. § 905 were also denied; the trial court drafted its own instructions for the jury on the issue. The jury returned a verdict for Cowsert,

which was reduced by a comparative negligence factor of 57½ percent. When PST&B's motion for judgment n.o.v. was denied, this appeal followed.

## II

■ The issue before us is whether the trial court erred in denying appellants' motions for directed verdict and judgment n.o.v. A judgment n.o.v. is proper when, viewing the evidence and reasonable inferences therefrom most favorably to the nonmoving party, the court can say as a matter of law that there is no substantial evidence supporting the verdict. *Hojem v. Kelly*, 93 Wn.2d 143, 145, 606 P.2d 275 (1980). Evidence is substantial if it would convince an unprejudiced, thinking mind of the truth of the declared premise. *Hojem*, at 145. A similar standard exists for directed verdicts. *See Bertsch v. Brewer*, 97 Wn.2d 83, 640 P.2d 711 (1982). Appellant vessel owners contend that, even viewing the evidence in the light most favorable to respondent, they have breached no duty of care owed respondent under applicable maritime law.

## A

Prior to 1972, the criteria for recovery from a vessel owner for onboard accidents under the LHWCA was whether the vessel was "unseaworthy". Proof of unseaworthiness required no showing of fault on the part of the vessel owner. The existence of an unsafe, injury–causing condition on the vessel was enough to impose liability, even though the condition may have been caused by the plaintiff's employer (usually a stevedore) or plaintiff's co–workers. In 1972, however, the LHWCA was amended to limit the owner's liability to those injuries caused by the "negligence of the vessel." 33 U.S.C. § 905(b). The purpose of the modifications was "to place an employee injured aboard a vessel in the same position he would be if he were injured in non–maritime employment ashore . . . and not to endow him with any special maritime theory of liability or cause of action . . ." S. Rep. No. 1125, 92d Cong. 10 (1972) (hereafter Rep.). The 1972 amendments were designed to encour-

age safety by placing the duty of care on the party best able to prevent accidents. *Clemente v. Farrell Lines Inc.*, 465 F. Supp. 728 (E.D.N.Y. 1979).

### B

While section 905(b) imposes a negligence theory of recovery, it fails to define the parameters of such a standard. Much was left to be resolved through the "application of accepted principles of tort law and the ordinary process of litigation." Rep., at 11. It was not until 1981, in *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 68 L. Ed. 2d 1, 101 S. Ct. 1614 (1981), that the Supreme Court spoke definitively on the duty owed by a vessel to independent contractors and their employees engaged to work aboard the vessel. Plaintiff in *Scindia* was a longshoreman–employee of an independent contractor–stevedore company engaged by the vessel to load bags of wheat. Plaintiff was injured while working in the ship's hold when he was struck by cargo that fell from a pallet being held in suspension by a winch. The winch was part of the ship's gear, and was being operated by another longshoreman. The winch's braking mechanism had allegedly been malfunctioning for the 2 days preceding the accident. There was a dispute as to whether the vessel owner knew or should have known of the alleged defect. Plaintiff sued the vessel owner under 33 U.S.C. § 905(b). The District Court granted summary judgment for the vessel owner, holding that under section 905(b) a shipowner is not liable for dangerous conditions created by the stevedore's negligence while the stevedore is in control of the work, and that even if the shipowner knew or should have known of the defective winch, a shipowner has no duty to warn the stevedore or its employees of obvious defects. The Court of Appeals reversed, holding that a shipowner had a duty to continue to inspect the condition of the vessel even if it had been turned over to the stevedore in safe condition.

The Supreme Court rejected the analysis used by both the lower courts and set out its own standard:

[T]he vessel owes to the stevedore and his longshoremen employees the duty of exercising due care "under the circumstances." This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. . . . The shipowner thus has a duty with respect to the condition of the ship's gear, equipment, tools, and work space to be used in the stevedoring operations; and if he fails at least to warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman.

(Citation omitted.) *Scindia,* 451 U.S. at 166–67. The vessel owner is therefore responsible for eliminating hidden dangerous conditions existing at the outset of the independent contractor's operations which are known to the vessel or should be known to it in the exercise of reasonable care.

The Court went on to summarize the vessel's general duty once the independent contractor has begun operations:

We are of the view that absent contract provision, positive law, or custom to the contrary—none of which has been cited to us in this case—the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore. The necessary consequence is that the shipowner is not liable to the longshoremen for injuries caused by dangers unknown to the owner and about which he had no duty to inform himself. This conclusion is plainly consistent with the congressional intent to foreclose the faultless liability of the shipowner based

on a theory of unseaworthiness or nondelegable duty. The shipowner, within limits, *is* entitled to rely on the stevedore, and owes no duty to the longshoremen to inspect or supervise the cargo operations.

451 U.S. at 172. The Court noted that:

As a general matter, the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards. Section 41 of the Act, 33 U. S. C. § 941, requires the stevedore, the longshoremen's employer, to provide a "reasonably safe" place to work and to take such safeguards with respect to equipment and working conditions as the Secretary of Labor may determine to be necessary to avoid injury to longshoremen. *The ship is not the common employer of the longshoremen and owes no such statutory duty to them.*

(Footnotes omitted. Italics ours.) 451 U.S. at 170.

The *Scindia* Court then considered the parameters of the vessel's duty upon learning of the existence or development of a dangerous condition during the independent contractor's operations, which condition is known to the independent contractor and may cause injury to its employees. Under the facts of *Scindia,* the plaintiff–longshoreman claimed that the winch in question had been malfunctioning for 2 days prior to the accident. The vessel countered that even if it was aware of the condition of the winch, it was entitled to rely on the judgment of the stevedore in continuing to use the winch. The Court stated:

[W]hether [the winch] could be safely used or whether it posed an unreasonable risk of harm to Santos or other longshoremen was a matter of judgment committed to the stevedore in the first instance. . . .

Yet it is quite possible, it seems to us, that [the stevedore's] judgment in this respect was so obviously improvident that [the vessel], if it knew of the defect and that [the stevedore] was continuing to use it, should have realized the winch presented an unreasonable risk of harm to the longshoremen, and that in such circumstances it had a duty to intervene and repair the ship's winch. The same would be true if the defect existed from the outset and [the vessel] must be deemed to have been aware of its condition.

(Footnote omitted.) 451 U.S. at 175–76.

Finally, the Court addressed the need to make the jury aware of the scope of the duties and justifiable expectations of the vessel and the stevedore:

> As we have indicated, the legal duties placed on the stevedore and the vessel's justifiable expectations that those duties will be performed are relevant in determining whether the shipowner has breached its duty. The trial court, and where appropriate the jury, should thus be made aware of the scope of the stevedore's duty under the positive law. But an equally necessary inquiry is whether the pertinent statutes, regulations, or custom place or assume a continuing duty on the vessel to repair defective ship's gear being used by the stevedore in the cargo operation.

451 U.S. at 176.

### III

The first question which we must address is whether the limitations placed on a vessel owner's duty of care by the *Scindia* decision are applicable to the case at bar. A vessel owner is entitled, under *Scindia,* to rely on an independent contractor's duty to exercise due care and provide its own employees a safe workplace if the vessel owner has turned control of the work over to the independent contractor. If, however, the vessel "actively involves itself in the [independent contractor's] operations", or if the vessel "fails to exercise due care to avoid exposing [employees of the contractor] to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the . . . operation", then the *Scindia* limitations do not apply. *See Scindia,* 451 U.S. at 167. Whether or not appellant vessel owners' duty of care is limited by *Scindia* in this case depends, then, on who exercised active control over Duwamish's nighttime operations.

Whether a vessel owner has turned control of the work over to an independent contractor is, at least where the facts are not in dispute or susceptible to more than one interpretation, a question of law. *See Larner v. Torgerson Corp.,* 93 Wn.2d 801, 804, 613 P.2d 780 (1980). The issue

should thus be decided by the trial court. According to *Larner,* "[t]he crucial factor is the lack of a right to control the details of the work performed by [the independent contractor] or his employees." 93 Wn.2d at 805. We find comment *c* to section 414 of the Restatement (Second) of Torts (1965) helpful:

> [T]he employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his *methods of work,* or as to *operative detail.* There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

(Italics ours.) Restatement (Second) of Torts § 414, comment *c* (1965).

Thus, if appellants are to be prevented from invoking the rules laid out in *Scindia,* there must be a showing that they retained "active control" of the vessel during Duwamish's operations. *See Scindia,* 451 U.S. at 167. Such control must have been over the actual methods of work used by Duwamish, and the operative detail.

Cowsert's theory of the case is that PST&B exercised joint control with Duwamish over the work as a matter of law, thereby rendering the *Scindia* limitations on a vessel's duty of care inapplicable. He points to evidence presented at trial that appellants placed both barges at the accident site, that appellants controlled moorage of the barges, that appellants directed the placement of gangways, that heavy equipment was moved by appellants' cranes, and that appellants' daytime employees cleaned up after Duwamish crews. This information, however, is simply irrelevant as to the question of who exercised active control over the details of the work performed by Duwamish. Such information is also irrelevant as to who exercised active control over the

work area *during Duwamish's nighttime operation.*

Indeed, the only relevant allegations that Cowsert makes are that appellants controlled the lighting of the workplace site and that appellants directed Cowsert and other Duwamish foremen as to what work needed to be done on each barge. An examination of the record, however, reveals that appellants did nothing more than supply some of the lighting equipment. Some lights were permanently set on poles in appellants' yard, and some were part of the barge's own lighting equipment. In addition there were several portable string lights and drop lights, some belonging to PST&B, some to Duwamish. No evidence was offered to suggest that PST&B had any control over the manner in which these lights were utilized on the barge during Duwamish's nighttime operations. This is hardly surprising, however, as PST&B personnel left the site each day hours before dark.

The general directions conveyed to Duwamish foremen by PST&B were not specific enough to constitute control over the actual details of the work. A PST&B representative would tell Duwamish foremen what PST&B wanted done to each barge. PST&B made no attempt, however, to instruct Duwamish employees as to the methods used in the welding and cutting operations.[2]

In short, Cowsert has not shown that appellants controlled, as a matter of law, the methods of work or the lighting procedures employed by Duwamish's night crew. None of appellants' personnel were at the jobsite when Duwamish's night crew was at work. Indeed, the record makes it clear that Duwamish, rather than PST&B, exercised control over the night crew operations as a matter of law. We so conclude. Thus, the *Scindia* limitations on a

---

[2]A somewhat similar situation was presented to this court in *Larner v. Torgerson Corp.,* 93 Wn.2d 801, 804, 613 P.2d 780 (1980). The *Larner* court, in holding that an employer had not retained a right of control over an independent repair contractor, noted that the employer had not directed the details of the repair work other than to indicate which machine needed to be repaired first. 93 Wn.2d at 805.

vessel owner's duty of care are applicable to this case.

## IV

The proper inquiry concerning a motion for directed verdict or judgment n.o.v. is whether, viewing the evidence and reasonable inferences therefrom most favorably to the non-moving party, there is any substantial evidence supporting a verdict for that party. *See Hojem v. Kelly,* 93 Wn.2d 143, 145, 606 P.2d 275 (1980). Upon reviewing the record in this case, we find no substantial evidence supporting a verdict for Cowsert under the LHWCA as that act has been interpreted by the United States Supreme Court in the *Scindia* decision.

A vessel owner's initial duty, under *Scindia,* is to exercise ordinary care to eliminate, or warn the independent contractor of, hidden dangerous conditions existing at the outset of the contractor's operations "that would likely be encountered by the [independent contractor] in the course of his . . . operations." *Scindia,* 451 U.S. at 167. This duty is confined, however, to those areas of the vessel where the employees of the independent contractor may be reasonably expected to go. *United States Fid. & Guar. Co. v. Jadranska Slobodna Plovidba,* 683 F.2d 1022, 1026 (7th Cir. 1982). It does not appear from the record in the case at bar that appellants had any reason to expect that anyone from Duwamish's night crew would venture onto any barge other than the one being worked on (the *Agattu*); especially not without adequate lighting. Cowsert himself testified at trial that the *Agattu* was the only barge upon which work was to be done the night of the accident. Barge 418 was not part of the contemplated work area that night. Thus, PST&B's duty to eliminate dangerous conditions did not extend to barge 418.[3]

---

[3] Even assuming, arguendo, that barge 418 was part of the contemplated work area, the lack of lighting thereon and the absence of a gangway over any gap between barge 418 and the *Agattu* do not appear to be the sort of "hidden" dangers that *Scindia* requires a vessel owner to eliminate before turning the area over to the independent contractor. Appellant vessel owners' initial duty of ordinary

■ Once Duwamish took control and began operations, PST&B's duty of care was reduced. Appellants were entitled to rely, within limits, on Duwamish to provide its workers a "reasonably safe" place to work as required by 33 U.S.C. § 941. The appellants, as vessel owners, owed no such statutory duty to Duwamish workers. *See Scindia*, 451 U.S. at 170. A vessel owner who has turned control of the work area over to an independent contractor has a duty to intervene, under *Scindia*, only where three conditions have been met: (1) the vessel owner actually knows of a dangerous condition in the work area; (2) the vessel owner actually knows that the independent contractor is continuing operations despite the condition, and (3) the vessel owner should realize that the condition presents an unreasonable risk of harm to the contractor's employees. *See Scindia*, 451 U.S. at 175–76.[4]

---

care extends to dangers "that are not known by the [independent contractor] and would not be obvious to or anticipated by him if reasonably competent in the performance of his work." *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 167, 68 L. Ed. 2d 1, 101 S. Ct. 1614 (1981). The absence of lights and a gangway would, we think, be obvious to a reasonably competent repair contractor. Thus, even if barge 418 was part of the contemplated work area, appellants did not violate their duty under *Scindia* to exercise "ordinary care under the circumstances" to provide a reasonably safe work area at the outset of the operations.

[4]The instructions given the jury in this case do not correctly describe appellants' limited duty under *Scindia*. Instruction 10, the main instruction on appellants' duty of care, is essentially a paraphrase of several OSHA regulations which the court says "apply to this case". Following the paraphrased regulations, the instruction provides:

Although these regulations were enacted and intended to govern the conduct of Duwamish Shipyard, Inc., as an employer, if you should find that the appellants here had notice of the violations, if any, of these regulations *or that the appellants in the exercise of reasonable care should have had notice of such violation* and that such violation was a proximate cause of the accident, then you may consider that fact along with all other evidence in the case in determining the liability of the appellants.

(Italics ours.)

This instruction impliedly imposes a duty on the vessel to inspect and discover unsafe conditions arising during the course of the independent contractor's work. The *Scindia* rule, however, is that no such duty exists "absent contract provision, positive law, or custom to the contrary". 451 U.S. at 172. OSHA regulations do not impose a duty of care on the vessel. The sole responsibility for compliance

Cowsert contends that the gap between the *Agattu* and barge 418 and the lack of lighting on barge 418 were dangerous conditions in the work area which appellant vessel owners had a duty to cure. There is nothing in the record, however, to suggest that the contemplated work area on the night of the accident extended beyond the deck of the *Agattu.* Cowsert himself testified that his crew was assigned to work only on the *Agattu* that night. Thus, Cowsert's contention that PST&B had a duty to intervene in Duwamish's operations is without merit.

We would reach the same conclusion even if barge 418 was part of the work area. Assuming for the moment that darkness and a gap between two barges is a "dangerous condition", there is no evidence in the record to indicate that PST&B was aware of either the gap or the fact that Duwamish chose to continue working without remedying the situation by tightening the lines between the barges or placing temporary lights so as to illuminate the edges of the barges. None of PST&B's employees were even at the jobsite during Duwamish's nighttime operations.

Neither is there anything to suggest that appellants, even if they knew of Duwamish's indifference to the darkness and gap between the barges, should have realized that an unreasonable risk of harm was presented to Duwamish employees. A similar situation to that before us was presented in *United States Fid. & Guar. Co. v. Jadranska Slobodna Plovidba, supra.* In that case, a longshoreman had entered a darkened ship's hold and fallen through an

---

with OSHA is on the independent contractor. *Davis v. Partenreederei M.S. Normannia,* 657 F.2d 1048, 1053 (9th Cir. 1981).

Instruction 10 also implies that if a vessel owner merely has notice of an OSHA violation by an independent contractor, that is enough to impose a duty on the vessel to remedy the situation. This is not correct. Such knowledge alone does not create a duty on the part of a vessel owner to intervene. *Bandeen v. United Carriers (Pan.), Inc.,* 712 F.2d 1336 (9th Cir. 1983).

open hatch to his death. (The longshoreman had been working in the hold earlier in the day, but had since moved on to another area of the ship with his crew.) The court, in holding that the vessel owner was not liable for the longshoreman's death, stated:

> Moreover, the relevant probability . . . is not the probability that a longshoreman would enter a darkened hold but the probability that he would fall into an open hatch in such a hold. The probability was small. The darkness was as effective a warning of danger as a sign would have been. . . .
>
> . . . The shipowner was not required to anticipate that a longshoreman knowing of the open shaft would not be able to avoid it; this was possible—it happened—but the probability was too remote to warrant precautions beyond the implicit warning of darkness itself.

683 F.2d at 1028. *See also Clemente v. Farrell Lines Inc.,* 465 F. Supp. 728 (E.D.N.Y. 1979), where the court held that any alleged defect in lighting should have been noted and remedied by the independent contractor in control of the area, and not by absent ship's personnel. 465 F. Supp. at 731.

The LHWCA, as amended in 1972, seeks to encourage safety by placing the responsibility for the safety of harbor workers on the party best able to prevent accidents. The facts of this case make it clear that Duwamish, rather than PST&B, was best able to insure the safety of Clay Cowsert and his crew. PST&B was not required to anticipate that Duwamish employees would ignore the obvious warning of darkness on barge 418. We therefore hold that, viewing the record most favorably to Cowsert, there is no evidence supporting his verdict.[5]

---

[5]Thus, we do not reach appellants' assignments of error regarding the admission of inflammatory medical testimony or improper comment on the evidence by the trial court.

The trial court's denial of appellants' motion for judgment n.o.v. is hereby reversed.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

Reconsideration denied May 23, 1984.