[No. 14416-0-III.   Division Three.   April 4, 1996.]

H. P. HANSEN, ET AL., *Appellants*, v. CHELAN COUNTY, *Respondent*.

*Dennis D. Reynolds, Curtis R. Smelser, Rebekah R. Ross, Daniel W. Ferm,* and *Williams, Kastner & Gibbs,* for appellants.

*Gary A. Riesen, Prosecuting Attorney*; and *Brian J. Dorsey* and *Davis Arneil Law Firm,* for respondent.

MUNSON, J. — H.P. and Edna Hansen appeal from a superior court decision upholding the denial of a conditional use permit by the Chelan County Board of Adjustment (the Board). We hold the Board's reasons for denying the permit inadequate and reverse.

In 1992, the Hansens applied for a conditional use permit (CUP) for a 38.9-acre parcel owned by the Pearl K. Scammahorn Trust, of which Mrs. Hansen is trustee. The Hansens proposed to develop a nine-hole golf course on the property. The property had been used as orchard, but the fruit trees were of older, less desirable varieties, and most of the trees had been removed. According to Mrs. Hansen, replanting the orchard was not a viable option

because no financing could be obtained. Most of the adjoining property was in orchards, but some had been developed as residential.

Under the Chelan County Zoning Code (CCZC) the land was zoned "General Use." The CCZC permits general use property to be used outright for single family or duplex dwellings and for agricultural use. CCZC § 11.36.010. The property may also be subdivided for these purposes. CCZC § 11.36.010(4). All other uses require a conditional use permit. CCZC § 11.36.020. CCZC § 11.56.010 addresses the grant or denial of conditional use permits; it states in part:

> (c) Conditional uses shall be denied by the board of adjustment only when the board determines, after a public hearing thereon, that the proposed conditional use would be injurious to the public health, safety or welfare, or to the area adjoining the proposed conditional use irrespective of whatever conditions might be imposed, or where the board finds that the proposed conditional use would be incompatible with the adopted comprehensive plan for the area, irrespective of whatever conditions might be imposed.

The Board held a public hearing on the Hansens' proposal on August 10, 1992. The evidence at that hearing was aptly summarized by the superior court:

> Agency comments were received from the Department of Ecology, Department of Fisheries, the Yakima Indian Nation, the Chelan County Health District, the County Conservation District, the Public Works Department, the Department of Building and Fire Safety, the Peshastin Irrigation District, and the Chelan County Public Utility District. A fair summary of the Agencies' comments reveal that a majority included the protection of water quality, protection of Brender Creek and the associated wetlands, erosion control, dust control, traffic, fire protection, and the use of irrigation water, all of which could be addressed by appropriate conditions and mitigation measures.
>
> . . . [S]urrounding agricultural landowners . . . were generally concerned with errant golf balls, [pesticide] spray drift, noise, and set-backs.

The Board denied the CUP based on four findings of fact:

1) There are no totally effective mitigating measures that could be imposed on the development to eliminate the concerns of physical damage and trespass onto adjacent lands;

2) The project would, in all likelihood, encourage adjoining landowners to prematurely convert their orchards to residential uses;

3) The project is in conflict with the Comprehensive Plan as it would directly and indirectly reduce the agricultural base in the area;

4) Section 11.56.010 of the Chelan County Zoning Code requires the denial of projects that cannot be effectively conditioned and/or are incompatible with the Comprehensive Plan.

The Hansens sought review of the Board's denial in Chelan County Superior Court. The court issued a memorandum decision in May 1993, in which it stated there was insufficient evidence to support the Board's first three findings and, thus, that the Board's denial had been arbitrary and capricious. On August 18, the court entered its order remanding the matter to the Board for "general reconsideration" except for matters relating to public health, safety, and welfare.

On October 12, the Board held a second hearing on the Hansens' proposal. The agency comments at the second hearing were essentially unchanged from those at the first hearing. The focus of the neighboring orchardists' testimony was pesticide spray drift, the associated liability, and the size and effect of buffer zones to avoid spray drift on the proposed golf course. In making its determination, the Board did consider portions of the comprehensive plan which it had not considered in the first hearing. By a 3 to 2 vote, the Board again denied the CUP after entering nine findings of fact:

1. The proposal is inconsistent with the general development goals and the specific development policies for property located within an area identified as being appropriate for agricultural land uses.

2. The proposed use does not encourage the use of agricultural land for continuing commercial production.

3. Also, in direct conflict with the goals stated in the comprehensive plan, the project would directly or indirectly reduce the agricultural base in the area by eliminating two-thirds of the orchard on-site and placing a conflicting land use adjacent to neighboring orchards.

4. Section 11.56.010 of the Chelan County Zoning Resolution requires the denial of projects that are incompatible with the comprehensive plan.

5. Based on the testimony given, any buffer zone created with the proposed use to protect agricultural use would destroy the financial viability of the golf course.

6. Based on testimony given, state regulations on agriculture make it impossible to establish a boundary which would protect the proposed golf course and provide for the continued use of the commercial operating orchards.

7. Introduction of non-compatible land uses compromise[s] the ability to maintain good agricultural practices.

8. Testimony reveals that the size of the proposal would adversely affect 7 adjacent commercial orchards.

9. Testimony given reveals that both short term and long term economic viability of the agricultural area will be lost.

Once again, the Hansens sought review by the superior court. The Cashmere Valley Orchardists (the Orchardists), an unincorporated association representing the neighboring orchardists, was allowed to intervene. The court determined the Board's denial of the permit was not arbitrary and capricious and upheld the denial.

The Hansens contend the Board's findings are improper bases for denying the conditional use permit or are not supported by the evidence. We agree.

■ An appeal from a trial court's decision under a writ of certiorari is based on the record of the administrative tribunal. *Bay Indus., Inc. v. Jefferson County*, 33 Wn. App. 239, 240-41, 653 P.2d 1355 (1982). Issues of law are

reviewed de novo, and factual determinations are reviewed under the substantial evidence standard. RCW 7.16.120(5); *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 29 n.3, 891 P.2d 29 (1995) (the 1985 statutory amendment replaced the previous "arbitrary and capricious" standard with the substantial evidence standard). "Evidence is substantial if it would convince an unprejudiced, thinking mind of the truth of the declared premise." *Cowsert v. Crowley Maritime Corp.*, 101 Wn.2d 402, 405, 680 P.2d 46 (1984) (citing *Hojem v. Kelly*, 93 Wn.2d 143, 145, 606 P.2d 275 (1980)).

Where a zoning ordinance is inconsistent with the underlying comprehensive plan, the zoning ordinance generally prevails. *Weyerhaeuser v. Pierce County*, 124 Wn.2d 26, 43, 873 P.2d 498 (1994). Chelan County's ordinance regarding the issuance of CUPs, as did the zoning ordinance at issue in *Weyerhaeuser*, requires consistency with the comprehensive plan as a condition for issuing the CUP. CCZC § 11.56.010(c); *Weyerhaeuser*, 124 Wn.2d at 43. In making its findings, the Board relied on one of the general development goals set out in the plan: "Encourage the use of agricultural land for continuing commercial production." It also relied on several of the plan's development polices: to encourage agriculture as a basic industry, to discourage direct or indirect displacement of agriculture, and to minimize the conflict between agriculture and other uses. However, to the extent the zoning code allows uses inconsistent with those goals and policies, it must prevail. *Weyerhaeuser*, 124 Wn.2d 26.

In its first finding, the Board found the proposed golf course inconsistent with the comprehensive plan's general goals and policies for land designated as agricultural. Rather than a finding, this is really a conclusion. However, findings 2, 3, and 9, respectively, were that the project did not encourage use of the land for commercial agricultural production, that it caused a reduction of the area's agricultural base, and that it would harm the economic viability of the area. These findings set out reasons for the Board's conclusion.

■ Despite the fact the golf course was inconsistent with the goals and policies of the comprehensive plan, the Board's findings are still insufficient to warrant denial of the CUP. "The effect of a proposed use on its neighbors will not support a denial of a special permit unless the effect is greater than that of uses permitted in the district without special permit." 3 ROBERT M. ANDERSON, AMERICAN LAW OF ZONING § 21.14, at 692 (3d ed. 1986); *see also Baxter v. Gillispie*, 60 Misc. 2d 349, 303 N.Y.S.2d 290 (1969); *Berlant v. Zoning Hearing Bd.*, 2 Pa. Commw. 583, 279 A.2d 400 (1971). Here, there was, however, no finding, or any evidence, that the effects of the proposed golf course were any greater than would occur if the Hansens used the property for uses permitted outright. Because the property is zoned as general use property under the CCZC, the Hansens could, without a CUP, remove the existing orchard, subdivide the property, and build single-family or duplex dwellings. This is also inconsistent with the goals and policies upon which the Board relied; commercial production on the land would cease, there would be a direct displacement of agriculture, and the economic viability of the area would be damaged.

Part of finding 3 and findings 5 and 6 deals with the indirect loss of agriculture and the need for a buffer zone. The only evidence which supports the need for such a buffer relates to pesticide spray drift. The testimony indicated a buffer zone from 100- to 120-feet wide was required to allow the application of pesticide without spray drifting onto adjacent land. It is, however, state and federal pesticide laws and regulations which regulate pesticide spray drift. The evidence was that this same buffer would be required if the Hansens were to use their property for residential development or various agricultural uses, including an organic orchard. *See Langan v. Valicopters, Inc.*, 88 Wn.2d 855, 567 P.2d 218 (1977). Again, these are uses permitted outright.

Finding 9 concerns the size of the proposed golf course. The magnitude of the effect on the adjacent landowners is

related to the size of the project, but again, those uses permitted outright would be of the same size and have the same effect.

Of the two remaining findings, finding 4 merely restates the requirements of CCZC § 11.56.010(c) and finding 7 states that an incompatible use will compromise good agricultural practices. Both are general statements and are not necessary to the resolution of the issue.

We recognize this case presents a head-on conflict between the use of one's own property and the effects on the neighboring property. While there is substantial evidence to support some of the Board's findings, the problem is that none of the findings indicates any inconsistency with the comprehensive plan which would not occur if the Hansens used the property in a manner permitted outright. Nor do they address how the use of the property as a golf course damages or injures their neighbors in a way permitted uses would not. Thus, the Board's reasons for denying the CUP are inadequate as a matter of law, and the denial must be reversed. Because we find this issue to be dispositive, we do not address the Hansens' other contentions.

Reversed and remanded. The trial court is directed to remand the matter to the Board with directions to approve the CUP, subject only to those conditions recommended in the agency comments as the Board determines are appropriate.

SWEENEY, C.J., and SCHULTHEIS, J., concur.