FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 OCT -6 AM 9: 00



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MONIKA GLOVER, | ) | No. 70853-8-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| JOSEPH GARRETT, | ) | |
| | ) | UNPUBLISHED OPINION |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SYLVIA WEBER, as mother and natural | ) | |
| guardian of AMANDA S. WEBER, a minor, | ) | |
| | ) | |
| Respondent. | ) | FILED: October 6, 2014 |
| | ) | |

APPELWICK, J. — Weber brought an action against Glover for injuries sustained when her daughter fell off a horse owned by a third party and boarded on Glover's land. Glover appeals the trial court's order denying her motion for summary judgment. Glover argues that she is immune from liability under the equine activities statute, RCW 4.24.530–.540. We reverse and remand for entry of summary judgment in favor of Glover.

## FACTS

Joseph Garrett wished to find a home for his horse, Taz. Monika Glover, Garrett's fiancée, owned property with a grass field. Garrett and Glover alternated between boarding Taz at Glover's property and at his own. Sylvia Weber wished to find a horse

for her eight year old daughter, Amanda.[1]  Weber posted an advertisement on the internet.  Garrett responded to the advertisement and offered Taz to Weber.  Garrett and Weber met and arranged for Weber to have a two week trial with Taz.  They agreed that Weber would return the following week to pick up Taz.

On July 10, 2011, Weber returned to Glover's property to get Taz for the trial period.  After Weber and Garrett signed the trial agreement, Amanda took Taz for a ride.  Weber began to lead Amanda on Taz with a lead line.  Shortly thereafter, one of Weber's younger children indicated that she had to use the bathroom.  Weber asked Garrett to take the lead line, and Glover took Weber and the other child into the house to show them to the bathroom.  While Glover and Weber were inside, Amanda fell off Taz and injured her leg.

On August 15, 2012, Weber sued Garrett and Glover for negligence.  Glover moved for summary judgment.  She argued there was no evidence of negligence on her part, and further that she is immune from liability under RCW 4.24.530–.540, the equine activities statute.  Weber responded that Glover was negligent and that the equine activities statute is inapplicable.  The trial court denied Glover's motion for summary judgment.  Glover appeals.

## DISCUSSION

We review a grant or denial of summary judgment de novo.  Washburn v. City of Federal Way, 169 Wn. App. 588, 609, 283 P.3d 567 (2012), aff'd, 178 Wn.2d 732, 310 P.3d 1275 (2013).  Summary judgment is appropriate where there is no genuine issue as

---

[1] We refer to Amanda by her first name to avoid confusion.  No disrespect is intended.

2

to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one upon which the outcome of the litigation depends, in whole or in part. Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 861, 93 P.3d 108 (2004). In conducting this inquiry, the court must view all facts and reasonable inferences in the light most favorable to the nonmoving party. Id. at 860-61. The purpose of summary judgment under CR 56(c) is to avoid a useless trial. Conradt v. Four Star Promotions, Inc., 45 Wn. App. 847, 848, 728 P.2d 617 (1986).

Statutory interpretation is a question of law that we review de novo. State v. Gray, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012). The court's primary duty is to ascertain and carry out the legislature's intent. Arborwood Idaho, LLC v. City of Kennewick, 151 Wn.2d 359, 367, 89 P.2d 217 (2004). Statutory interpretation begins with the statute's plain meaning. Ent v. Wash. State Crim. Justice Training Comm'n, 174 Wn. App. 615, 619, 301 P.3d 468 (2013).

Glover argues that she enjoys immunity from liability under RCW 4.24.530–.540, the equine activities statute. The statute dictates that an "equine activity sponsor or an equine professional shall not be liable for an injury to or the death of a participant engaged in an equine activity." RCW 4.24.540(1). RCW 4.24.530 defines all of the relevant terms of the statute:

> (1) "Equine" means a horse. . . .
>
> (2) "Equine activity" means . . . (d) riding, inspecting, or evaluating an equine belonging to another whether or not the owner has received some monetary consideration or other thing of value for the use of the equine or is permitting a prospective purchaser of the equine to ride, inspect, or evaluate the equine; . . .

3

(3) "Equine activity sponsor" means an individual, group or club, partnership, or corporation, whether or not the sponsor is operating for profit or nonprofit, which sponsors, organizes, or provides the facilities for, an equine activity including but not limited to: Pony clubs, 4-H clubs, hunt clubs, riding clubs, school and college sponsored classes and programs, therapeutic riding program, and operators, instructors, and promoters of equine facilities, including but not limited to stables, clubhouses, ponyride strings, fairs, and arenas at which the activity is held.

(4) "Participant" means any person, whether amateur or professional, who directly engages in an equine activity, whether or not a fee is paid to participate in the equine activity.

(5) "Engages in an equine activity" means a person who rides, trains, drives, or is a passenger upon an equine, whether mounted or unmounted, and does not mean a spectator at an equine activity or a person who participates in the equine activity but does not ride, train, drive, or ride as a passenger upon an equine.

There is no factual dispute that Taz is an equine and that Amanda was a participant in the equine activity of riding a horse belonging to Garrett on Glover's land. But, there is a dispute as to whether Glover falls within the definition of "equine activity sponsor."

Weber argues that Glover was not an equine activity sponsor as contemplated by the statute. Because of the list of activities specifically provided in the definition, Weber argues that to qualify as an "equine activity sponsor" Glover needed to engage in public, group-based equine activities and professional equine activities. She contends the legislature did not intend for the statute to extend immunity to Glover's type of activities.

Under the plain language of the statute, an "equine activity sponsor" includes an individual who provides the facilities for an equine activity. See RCW 4.24.530(3). It is undisputed that Glover provided facilities to board Taz. Nothing in the plain language of the statute requires the equine activity to be public or group-based in order to be covered

4

under the statute. Further, while the equine activities listed in the definition of "equine activity sponsor" are somewhat group-based in nature, that list is explicitly not exhaustive. See RCW 4.24.530(3). The statute specifically says, "including but not limited to" the enumerated activities. RCW 4.24.530(3) (emphasis added). Glover was an equine activity sponsor under the statute.

The plain purpose of the equine activities statute is to limit liability. Patrick v. Sferra, 70 Wn. App. 676, 680, 855 P.2d 320 (1993). In Patrick, the court noted, "After a sweeping and broad definition of 'sponsor' [the statute] provides that sponsors and equine professionals shall not be liable except as specifically provided in the act." Id. Subject to some exceptions,[2] none applicable here, the statute provides that an, "equine activity sponsor or an equine professional shall not be liable for an injury to or the death of a participant engaged in an equine activity." RCW 4.24.540(1).

By the plain language of the statute, Glover is an equine activity sponsor, immune from liability under the equine activities statute.[3] Based on the undisputed facts here, all of the statutory definitions are satisfied. The trial court erred in denying Glover's motion

---

[2] In her brief, Weber does not assert that any exception applies. But, in oral argument, Weber asserted that Glover is not immune under the equine activities statute, because she falls under the exception in RCW 4.24.540(2)(b)(i)(A). Weber contends Glover is not immune, because she provided the tack that contributed to Amanda's fall. While it is disputed who between Garrett and Weber provided the tack, there is no factual support in the record that Glover provided the tack. No material fact has been raised relative to the statute. Therefore, this argument is without merit.

[3] We need not reach Weber's arguments that Glover acted negligently. However, it is worth noting that horses are not presumed to be unreasonably dangerous. Hojem v. Kelly, 21 Wn. App. 200, 205, 584 P.2d 451 (1978), aff'd, 93 Wn.2d 143, 606 P.2d 275 (1980). Weber does not dispute that Taz was a gentle-mannered and well-behaved horse. The facts would not support the argument that Taz was a dangerous condition on the land. It appears we would reach the same result were we to apply the common law of negligence.

for summary judgment. We reverse and remand for entry of summary judgment in favor of Glover.

WE CONCUR:

Appelwick, J

Trickey, J

Dwyer, J