[No. 23677. *En Banc.* February 20, 1933.]

Conrad Diettrich, Jr., *et al., Respondents*, v. J. J. Newberry Company, *Appellant.*[1]

*Marvin Evans* and *Hamblen & Gilbert*, for appellant.

*Pedigo, Watson & Gose,* for respondents.

Holcomb, J.—This action in equity was brought by lessees against a corporation which, by contract with the lessors, became subrogated to the rights and liabilities of the lessors under their lease. The suit is for specific performance of a lease covenant to extend the term.

The complaint alleges that, on or about September 29, 1925, certain members of a family by the name of

[1]Reported in 19 P. (2d) 115.

Seil, being then the owners of the two story building at 14 East Main street, in Walla Walla, entered into a certain written lease of the ground floor and basement with the plaintiffs, for the five-year term ending March 1, 1931, the rental for the term being two hundred and fifty dollars per month. That the lease specifically provided as follows:

"It is further understood and agreed that at the expiration of this lease the said lessees shall have the option of an additional term of five years at a rental to be agreed upon between the parties prior to the expiration of this lease, intending thereby to give the said lessees the preference right to lease the said premises at a rental acceptable to the lessors."

The complaint further alleges that respondents fully complied with the terms of the lease, and have exercised the option to extend the term of the lease an additional five years for a reasonable monthly rental, which they believe is two hundred and fifty dollars. That, on or about May 21, 1929, the lessors entered into a certain lease with defendant corporation whereby they leased to it, as lessee, for the term of twenty-five years, beginning June 1, 1929, the entire building and premises of which the property covered by the lease of respondent is a part, subject, however, to their lease, together with their tenancy and the option for the additional term of five years, as above mentioned. That, prior to March 1, 1931, they repeatedly applied to defendant for an agreement and understanding whereby the rental for the additional term could be fixed and agreed upon, but that defendant has failed and refused to agree upon any reasonable rental. That the defendant demands the unreasonable rental of six hundred dollars per month. The complaint concludes with a prayer for a decree requiring defendant to permit respondents to continue their tenancy of

the premises for the additional five-year term at a reasonable rental, to be fixed by the court, and enjoining defendant, its officers and agents, from disturbing their peaceable possession during such additional term.

A general demurrer, upon the ground that the complaint did not state facts sufficient to constitute a cause of action, was overruled. Defendant thereupon answered, alleging that six hundred dollars per month rental was fixed by and acceptable to it. It further denied that it had acted arbitrarily in fixing this rental, and prayed for judgment accordingly. The demurrer was renewed at the trial by an objection to the introduction of any evidence under the complaint, upon the same ground, which was overruled.

The case was tried to the court, resulting in a decree in favor of respondents, and fixing the reasonable rental at $265 per month for the additional five-year period, from which decree this appeal is brought.

▉ It is first urged by appellant that, as a matter of law, the paragraph in respondents' lease, above quoted, gives appellant the right to fix the amount of rental to be paid by respondents for the extension period, and some authority is cited which would seem to go so far as to hold that, where the rental for the additional period is to be fixed *in futuro,* the extension clause is unenforcible and void for uncertainty and indefiniteness. Such, however, is not the law of this state.

In *Anderson v. Frye & Bruhn,* 69 Wash. 89, 124 Pac. 499, this court, in holding valid an option renewal clause, containing the words ''at a rental satisfactory to both lessor and lessee,'' said in part:

''It is manifest that this language was put into the contract with a view to giving appellant [lessee] some rights looking to a renewal which it would not other-

wise have. This of course is inconsistent with the notion that respondent [lessor] can, by any arbitrary action on his part, nullify this portion of the contract."

In *Young v. Nelson,* 121 Wash. 285, 209 Pac. 515, 30 A. L. R. 568, the option for extension of the lease-term provided for "such rental as may then be agreed upon between the lessor and the lessee." The court, in comparing the *Anderson v. Frye & Bruhn* case, *supra,* said:

"Here, while the terms of the renewal agreement are upon 'such rental as may then be agreed upon,' and while its terms are not word synonyms with the term 'satisfactory,' they are equivalent to the same thing. The rental agreed upon between the parties would be, presumably, a rental satisfactory to both parties, and *vice versa,* a rental satisfactory to both parties should be agreed to by both."

In the lease in this case, we have a somewhat different phrase, viz: "At a rental acceptable to the lessors." Obviously, there is no marked difference in these three phrases,—"satisfactory to both lessor and lessee," "agreed upon between the lessor and the lessee," and "acceptable to the lessors," or in their effect. "Acceptable to the lessors" must mean agreeable or satisfactory to them.

In *Salzer v. Manfredi,* 114 Wash. 666, 195 Pac. 1046, the optional extension clause concludes with the following: "Provided, however, that the lessor herein desires to rent the said premises." To the first question in the case, namely, "Is the option for a new lease enforceable by either party against the other without his consent thereto," the court said:

"In view of the facts disclosed and the conclusions we have reached, the first question is now a moot question only, and need not be here considered; though, under the familiar rule that doubtful provisions must be construed in favor of the lessee, we would no doubt

be inclined to an affirmative answer, if an answer were necessary."

It is to be noted that the lease in this case gives the option at the expiration of the original term to the lessees of an additional term of five years, the rental to be agreed upon prior to the expiration of that lease, intending thereby to give the lessees the preference right to lease the premises at a rental acceptable to the lessor. The option of renewal and the preference right thereby reserved are options which could be enforced by a decree of specific performance if there were nothing else covenanted. See cases cited in notes to our decision in *Young v. Nelson, supra,* 30 A. L. R. 568, at p. 578.

Later cases cited by appellant in its additional authorities, namely: *Hill v. Prior,* 79 N. H. 188, 106 Atl. 641; *Pulsifer v. Walker,* 159 Atl. (N. H.) 426; *Edwards v. Bernstein,* 238 Ky. 38, 36 S. W. (2d) 662; *Cloverdale Co. v. Littlefield,* 240 Mass. 129, 133 N. E. 565, are either based upon the principle that such conditions in leases are too indefinite and uncertain to be enforced, which rule obtains in some states, or are not opposed in principle to the rule obtaining here. Thus, in the *Edwards* case, *supra,* the Kentucky supreme court alluded to that rule, citing a number of cases, and then said among the cases taking the opposite view were cases cited from Oregon, Arizona, Colorado, Michigan, Washington (citing *Young v. Nelson, supra),* and New York. That court held that, where the lessor desired to sell the property and so notified the lessee before the termination of the lease and the option for renewal could not be exercised, the lessee was not entitled to demand renewal. That court did not pass upon the question of whether the rule adopted in our cases and in the Oregon and other cases cited

therein, that such a renewal covenant in a lease which left the rental to be determined by agreement of the parties, was or was not valid for uncertainty, but a contract which equity would enforce. It assumed the correctness thereof.

In the *Cloverdale* case, *supra,* the supreme court of Massachusetts held that the provision in a lease giving the lessee the first right to re-lease for a further term of three years on the same conditions as therein mentioned was merely a preferential right to a re-lease in the event the lessor desired to lease the property and did not desire to sell it or occupy it himself. This, in principle, is in harmony with our own cases.

The *Hill* case, *supra,* from New Hampshire, construing the terms of the lease there involved, followed the same principle as in the *Cloverdale* case, *supra.*

In the *Pulsifer* case, *supra,* there was a provision in the lease entitling the tenant to exercise an option for a re-lease in case the lease had been satisfactory to lessors, which was held valid and that certain conditions which had arisen during the term of the lease made the lease unsatisfactory to the lessors; and that the unsatisfactoriness asserted by the lessor was not merely technical. We do not consider that case opposed in principle to our cases.

When the option reserved in the lease was to renew it before the end of the term for an additional term of five years at a rental to be agreed upon, we consider that option must be reasonably and not arbitrarily exercised by both parties. In other words, the lease being construed in favor of the lessee where possible, the rental acceptable to the lessors when the option was exercised by the lessees must be a reasonable rental.

In consonance with the rule of our cases, we conclude that the option clause is enforceable, and that

appellant may not arbitrarily fix any other rental charge than a reasonable one, and where that cannot be agreed upon, the lessee may have that amount determined by the courts. The demurrer and the objection to the introduction of any evidence were properly overruled.

 Appellant argues that the preference right to lease over the extended period rests upon the premise of the lessee paying as much rent therefor as any other responsible party would pay. This does not seem to us to be the proper theory. At the time the lease was first made, the lessors, in effect, agreed that the particular property, viz., the ground floor and basement, might be leased for a fixed price over the initial term, and for what it was reasonably worth over the extension period. The lessees had a right to rely upon that basis. To consider what the leased property would be worth when taken in conjunction with adjoining or other properties, cannot be a sound basis for determining the rental value. Under the lease, the specific property was alone considered, and in determining the rental value under the extension term this should be the sole test.

The mode of determining value cannot well be premised upon what is paid in consideration of the utilization of the particular property involved, when taken in conjunction with other property. The rental value of certain property alone might well be quite different from the value of that property used in conjunction with other property. Nor does it seem just that a rental for a twenty-five year term is comparable to that for a five-year term. It would seem that a test for determining the rental for the five-year extension term is the reasonable rental value of the ground floor and basement taken alone for that specified period.

In considering an extension clause which provided for the fixing of rental at "as much as any other responsible party will agree to give," the court, in the case of *Arnot v. Alexander,* 44 Mo. 25, 100 Am. Dec. 252, said as follows:

"The whole supposed difficulty rests upon the idea that what 'responsible parties will agree to give' for the use of rentable business property is different from and may be 'something more' than its full or highest rentable market value. This view of the subject we conceive to be erroneous. For whose benefit and to what end was this clause of renewal introduced into the deed of lease? Evidently it was intended for the benefit of the lessee, and may be supposed to have formed an inducement to the original renting. If the condition to the renewal included the payment by the lessee of anything more than the highest rentable market value of the leased premises, of what advantage could it be to him? Such a construction of the clause defeats the evident purpose and understanding of the parties, as that purpose and understanding is gathered from the language they employ. The lessee, instead of being put to a disadvantage in the general competition, was to be a favored party. By the terms of the contract he was to have the preference over other responsible bidders, and the irresponsible were excluded from the circle of competition. The amount of rent, therefore, was to be determined from the competition that might arise between exclusively responsible bidders in a fair and open market—that is, by the market value of the premises at the time of renewal. It is to be presumed that the parties contracted with reference to fair, reasonable, and practical results, and the language employed by them should have a fair, reasonable, and practical construction."

Respecting the reasonableness of the rental, after a careful examination of the evidence we consider that the trial judge very properly fixed that rental at $265 per month. The fact that appellant secured a long-time lease on properties which included the property

covered by the five-year lease, with the idea of utilizing all of the property, and in allocating the rental so paid to the separate pieces of property, felt that the property leased by the respondent would be worth six hundred dollars per month, does not satisfy us that that would be the reasonable value of the store room and basement at 14 Main street. However, as we have indicated, we are only concerned with the reasonable rental value of this particular store room with the basement, without regard to any scheme or venture such as appears to have been contemplated by appellant, and the evidence satisfies us that the reasonable value of this particular property would not exceed $275 and that it is, probably, more reasonable at $265 per month.

The judgment is affirmed.

MITCHELL, MILLARD, PARKER, and BLAKE, JJ., concur.

TOLMAN, J., concurs in the result.

STEINERT, J.—(dissenting)—I concede that a proper interpretation of the provision of the lease under consideration would not permit the lessor to fix an arbitrary rental, or one that would of itself defeat the lessees' preferential right to renew the term, but on the other hand it seems to me that, if the provision means anything, it means that a rent acceptable to the lessor is the rent which any responsible party would pay. Certainly, the lessor has the right to seek, and, if possible, to obtain that much, and certainly, the lessees would expect him to do that very thing. I think that such an interpretation is what the parties reasonably had in mind when the lease was executed.

I therefore dissent.

BEALS, C. J., and MAIN, J., concur with STEINERT, J.