[No. 34245. Department One. February 7, 1958.]

BHARAT OVERSEAS LTD., *Respondent and Cross-appellant,* v.
DULIEN STEEL PRODUCTS, INC., *Appellant.*[1]

[1]Reported in 321 P. (2d) 266.

Bogle, Bogle & Gates, Orlo B. Kellogg, and George N. Prince, for appellant.

Holman, Mickelwait, Marion, Black & Perkins, Burroughs B. Anderson, and Richard E. Walker, for respondent and cross-appellant.

MALLERY, J.—The plaintiff brought this action against the defendant for damages arising out of the breach of an oral contract made on November 17, 1955, under the terms of which the defendant agreed to sell, and the plaintiff agreed to buy, seven thousand long tons of used railway rails at $78.50 a ton.

From a judgment for the plaintiff, the defendant appeals. The plaintiff cross-appeals, but will nevertheless be referred to as the respondent.

The court found there were sufficient written memoranda supporting the oral contract to satisfy the statute of frauds. The appellant contends to the contrary.

The following is the language of appellant's exhibit No. 61, which is a cablegram sent to the respondent by the appellant:

"REFERENCE HOONS CONFIRMATION HAVE SOLD YOU 9500 TONS RAIL DOLLARS 78.50 LONG TON CANDF CALCUTTA BERTH TERM SHIPMENT DECEMBER/JANUARY TERMS SAME PREVIOUS TRANSACTION 1000 TONS STOP THIS SUBJECT YOUR ESTABLISHING ACCEPTABLE IRREVOCABLE LETCRED IMMEDIATELY WITH SEATTLE FIRST NATIONAL BANK RECEIVING YOUR BANKS ADVICE BY TEN OCLOCK TUESDAY MORNING NOVEMBER 22"

To this may be added respondent's exhibit No. 14, which was a telegram sent by the appellant to the respondent's agent Hoon. It reads:

"CONFIRMING TELEPHONE HAVE CABLED YOUR COMPANY CALCUTA [sic] REQUESTING LETCRED WITH BANK ADVICE TO SEATTLE FIRST NATIONAL BY TEN OCLOCK TUESDAY MORNING NOVEMBER 22 COVERING 9500 TONS RAIL $78.50 LONG TON CANDF CALCUTTA DECEMBER/JANUARY SHIPMENT SAME TERMS PREVIOUS 1000 TON SALE THIS PREDICATED YOUR UNDERSTANDING WE SUP-

PLYING APPROXIMATELY 7000 TONS OR MORE AND YOU GUARAN-
TEE SUPPLY ANY ADDITIONAL TONNAGE NECESSARY COMPLETE
CARGO OR LETCRED GUARANTEEING US AGAINST LOSS ACCOUNT
DEAD FREIGHT BASIS $23.00 LONG TON"

The parties, being experienced in this kind of transaction, understood this language, which conformed to certain trade usages, and no ambiguity has ever been claimed by either party on this account.

▮ The rule relating to the sufficiency of memoranda as stated in 37 C. J. S. 666, § 181, is:

"Thus the note or memorandum must disclose the subject matter of the contract . . . ; the parties thereto . . . ; the promise or undertaking . . . ; the terms and conditions . . . ; and, in some but not all jurisdictions, the price or consideration."

▮ The trial court was correct in finding the memoranda contained facts sufficient to take the oral contract out of the statute of frauds.

The appellant contends the memoranda were insufficient, because of four material discrepancies between the testimony relating to the oral contract and the terms of the memoranda.

Appellant makes its first contention of a material variance in these words:

"By plaintiff's own version of the asserted oral conduct [contract] Dulien's was to assure plaintiff freight at $23 per ton, paying any excess out of its own pocket. No such term appears in the asserted memoranda."

We find no merit in this contention. The language of exhibit No. 14, heretofore set out, sustains the respondent's position to the contrary.

Appellant's second contention is that exhibit No. 14 requires respondent to furnish appellant a letter of credit guaranteeing appellant against a dead-freight loss, but that the testimony of respondent's agent, Mr. Hoon, did not contain any such statements.

The record reveals that Mr. Hoon did not remember what was said about the form of the dead-freight guarantee. He

did not testify that there was nothing said about it. His testimony, therefore, was not a contradiction of the memoranda, but only an omission of any reference to the dead-freight guarantee, which is contained in the memoranda in question. The trial court properly held that all of the essentials of the oral contract are reasonably ascertainable from the memoranda.

Appellant's third contention is that respondent's agent Hoon testified that appellant promised to furnish a written contract to facilitate obtaining a letter of credit. The existence of a formal instrument was waived by the respondent for whose benefit is was intended.

Appellant does not contend the court should have found that a formal writing was prerequisite to the formation of a contract, but only that failure to mention it in the memoranda is a material variance from the oral agreement.

If parties intend or agree that the terms of a contract shall be reduced to a formally integrated and mutually executed writing as a condition precedent to the contract's *existence,* there is no contract until that is done. However, in the absence of evidence that the parties intended to so specifically condition their obligation, an informally manifested agreement, otherwise sufficient, is binding even though the parties contemplate later execution of a writing. 1 Williston on Contracts 59, 63, §§ 28, 28A; 1 Corbin on Contracts 75, § 30; 1 Restatement, Contracts 33, § 26; *Washington Dehydrated Food Co. v. Triton Co.,* 151 Wash. 613, 276 Pac. 562; *Pettaway v. Commercial Automotive Service,* 49 Wn. (2d) 650, 306 P. (2d) 219.

The appellant's fourth contention relating to variances is that the memoranda fixed the hour of ten o'clock a. m. for posting the letter of credit, but that no oral mention was made of this requirement in the testimony of the respondent. The letter of credit was furnished before ten o'clock a.m. on the Tuesday in question, in conformity with appellant's cablegram.

If the respondent had not previously orally promised to comply with the terms of the cablegram, it accepted them

by compliance. Appellant's satisfaction with the compliance was shown by subsequent acts.

■ The appellant further contends that posting the letter of credit was a condition precedent to its duty to ship the rails, and that there was a variance between the terms of the contract and the letter of credit, which made the posting of it ineffectual.

The trial court found that the letter of credit substantially complied with the contract, and that, in any event, the appellant waived a defense of variance by accepting it without objection to its terms and treating it as if it were in full compliance with the contract.

We agree with the trial court that the immaterial variance was waived.

The contentions of appellant are weakened by its conduct. Both appellant and respondent thought and acted as if there were a meeting of their minds. The appellant made this appear when Mr. Dulien, on its behalf, assured the Seattle First National Bank there was a contract, and that the letter of credit guaranteed the performance of it by the respondent. Indeed, the trial court thought the discrepancies relied upon by the appellant were the afterthoughts of counsel.

We have passed upon the sufficiency of the contract as an oral one. We, therefore, need not discuss the remaining assignments of error, which are predicated upon the theory that the contract is in writing.

The parties agreed that damages for breach of the contract would be limited to ten per cent of the *entire contract*. The court used ten per cent of the purchase price of seven thousand tons of rails as the proper amount of this limitation, because that was the maximum amount of rails the *appellant was required to sell*. The actual damages exceed this amount, and the cross-appeal is directed to this limitation.

■ Respondent contends that the limitation should be based on the maximum amount of rails the *respondent was required to buy*. This theory would be sound if the breach

of the contract had been by the buyer instead of the seller. The action, however, is based on the breach of the appellant seller. The rails it was obliged to sell, therefore, constitute the extent of its breach of the contract.

The trial court's finding was correct.

■ Respondent also contends that the limitation of ten per cent of the *entire contract* contemplated the inclusion of freight charges in addition to the price of the rails. This may be a barely tenable theory, but since it seems reasonable to us that the parties had in mind only the total purchase price of the rails as the basis for the limitation, we are not inclined to overturn the court's finding to that effect.

The judgment is affirmed. The respondent will recover its costs.

HILL, C. J., FINLEY, WEAVER, and OTT, JJ., concur.

March 27, 1958. Petition for rehearing denied.