[No. 5434–9–III.   Division Three.   May 24, 1984.]

FAMILY MEDICAL BUILDING, INC., *Respondent,* v. THE
DEPARTMENT OF SOCIAL AND HEALTH SERVICES,
ET AL, *Appellants.*

*Kenneth O. Eikenberry, Attorney General,* and *William L. Williams, Assistant,* for appellants.

*Richard B. Price, Michael J. Casey,* and *Reed & Giesa,* for respondent.

McINTURFF, J.—Family Medical Building, Inc. (FMB), brought this action against the State of Washington, Department of Social and Health Services (DSHS), and the Department of General Administration (G.A.) for damages when the State allegedly breached a promise to renew DSHS's existing lease and to lease additional space in FMB's building in Omak, Washington. The State appeals from a judgment awarding FMB $169,000 and from the order denying it judgment notwithstanding the verdict and/or new trial. We affirm on the issue of liability, but reverse and remand for a new trial on the issue of damages.

For purposes of this appeal from the denial of a judgment notwithstanding the verdict, we view the evidence and the inferences therefrom in the light most favor-

able to FMB, the nonmoving party. *Cowsert v. Crowley Maritime Corp.*, 101 Wn.2d 402, 405, 680 P.2d 46 (1984).

In 1970, DSHS, acting through G.A., leased the lower floor of FMB's building for 10 years. The lease contained an option to renew for 5 years at a monthly rental to be negotiated. The doctors who owned FMB occupied the upper floor with their medical practice.

In 1977, FMB's president, Dr. Amos Bratrude, wrote to Greg Works, administrator of DSHS's Omak office, to determine whether DSHS would exercise its option to renew when the lease expired in August 1980. Mr. Works replied he wanted DSHS to continue its lease, and he forwarded a copy of this letter to Bernie Nelson, the regional administrator. Mr. Nelson referred the inquiry to G.A., which responded directly to FMB through D. E. Salisbury, its chief leasing agent. Mr. Salisbury stated FMB would be contacted in the future with regard to renewal of the lease.

In 1978, Dr. Bratrude again exchanged letters with Mr. Works, advising that the medical practice was expanding. Thus, FMB needed to know whether DSHS's space would be available or whether FMB should construct additional space. According to the doctor, Mr. Works verbally promised DSHS would renew the lease. Dr. Bratrude testified that in a telephone conversation in January 1979 Mr. Works advised him that he had a commitment from his superiors approving the renewal and the lease of part of the additional space. Dr. Bratrude memorialized this conversation.

In late April or early May 1979, FMB employed a builder, Hans Albrecht, and began construction of the addition. FMB had already secured Mr. Works' ideas for the floor plan for the lower level. In April 1979, a representative of G.A.'s planning department made an on–site visit. The next official contact came from Otto Omlor, a real estate specialist employed by G.A. By letter dated May 14, 1979 directed to Joe LaDouceur (but addressed as Joe Lassiter), FMB's business manager, he stated:

> Pursuant to our telephone conversation today, this letter is to inform you that we, the Division of Real Estate,

Department of General Administration, had no knowledge of the negotiations between you and the local DSHS officials until April 25, 1979. We are now taking steps to correct the situation.

. . .

When you start building the addition to your building, we would appreciate it if only the outside walls are installed . . . until we can get an approved plan drawn showing what DSHS wants. . . .

. . .

As I explained to you on the telephone, the procedure that should be followed concerning . . . office space is for the agencies to notify us of their needs, and we will handle all negotiations with the lessor on behalf of the state. In the future, you will be dealing directly with me or another agent from the Division of Real Estate concerning the lease we have in your building, since our department is the only one authorized to negotiate leases.

In response, Mr. LaDouceur forwarded the memo of the January 1979 telephone conversation between Dr. Bratrude and Mr. Works. Meanwhile, Mr. Albrecht continued to work closely with DSHS's Omak personnel. The resulting building design was not usable as a commercially viable rental, except to DSHS.

In August 1979, DSHS advised G.A., "We wish to exercise the available 5–year renewal option if a satisfactory lease agreement can be negotiated for the approximately 1800 square feet expansion space." G.A., acting through Mr. Salisbury, advised Mr. LaDouceur of this request. In a memo to Mr. Omlor, Mr. Salisbury stated: "Told him [Mr. LaDouceur] we were firm unless his lease demands were unacceptable." Then, in December 1979, after construction was completed, DSHS advised FMB that it would not continue the lease beyond the original 10–year period. Instead, DSHS moved to other newly constructed facilities.

FMB's action for damages was submitted to the jury on four theories: (1) breach of express or (2) implied contract, (3) promissory estoppel, and (4) quasi contract. At trial, FMB produced evidence that the cost of constructing the addition was $204,251; the cost of remodeling the existing space to accommodate new tenants was $102,304; lost rent

on the existing space for a period of 6 months was $20,605, the estimated cost of remodeling the lower floor of the addition to accommodate new tenants was $35,000; and lost rent on the additional space was $92,138.

First, the State contends the statute of frauds bars recovery for breach of an express or implied–in–fact contract. We hold the statute does not bar this action.

█ It is undisputed that the agreement is within the statute of frauds.[1] The purpose of the statute "is to remove uncertainty and prevent imposition through the assertion of unfounded and fraudulent claims . . ." *Friedl v. Benson,* 25 Wn. App. 381, 387, 609 P.2d 449 (1980). The statute is satisfied "by making and executing a memorandum or memoranda which, taken together, are sufficient to meet the requirements of the statute." *Friedl,* at 387 (citing 72 Am. Jur. 2d *Statute of Frauds* § 285, at 805 (1974)). As stated in *Bharat Overseas Ltd. v. Dulien Steel Prods., Inc.,* 51 Wn.2d 685, 687, 321 P.2d 266 (1958):

> The rule relating to the sufficiency of memoranda as stated in 37 C.J.S. 666, § 181, is:
> "Thus the note or memorandum must disclose the subject matter of the contract . . .; the parties thereto . . .; the promise or undertaking . . .; the terms and conditions . . .; and, in some but not all jurisdictions, the price or consideration."

Here, the following writings are sufficient to meet the requirements of the statute: (1) the option to renew contained in the parties' 1970 lease; (2) the August 1979 letter from DSHS to G.A. requesting renewal "if a satisfactory lease agreement can be negotiated for the approximately

---

[1] An agreement to execute a lease is within the statute of frauds. *Friedl v. Benson,* 25 Wn. App. 381, 386, 609 P.2d 449 (1980) (citing, *inter alia, National Laundry Co. v. Mayer,* 79 Wash. 212, 216, 140 P. 393 (1914)). In addition, RCW 19.36.010 provides in part that:

> any agreement . . . shall be void, unless such agreement . . . or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, . . . that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof; . . .

and RCW 64.04.010 states that "[e]very conveyance of real estate, or any interest therein, . . . shall be by deed . . .".

1800 square feet expansion space"; and (3) Mr. Salisbury's subsequent memoranda to Mr. Omlor that he had advised Mr. LaDouceur of DSHS's request and that G.A. was firm unless his lease demands were unacceptable. The foregoing identify the subject matter of the lease as that property described in the original lease and the "1800 square feet expansion space." The parties are the same as those in the original lease, and the promise is that the State will lease the described subject matter. Finally, the term is for 5 years, at an acceptable rate. That is, G.A. had a duty to make a good faith effort to negotiate a rental and a duty to determine in good faith if the rate was acceptable. *Cf. Omni Group, Inc. v. Seattle–First Nat'l Bank,* 32 Wn. App. 22, 25, 645 P.2d 727 (1982) (a promise is not illusory by virtue of the obligation being conditioned on the promisor's taking some action which has a result satisfactory to him).[2]

Consequently, we hold that the Superior Court properly instructed the jury on FMB's theories of an express or an implied–in–fact contract and properly rejected the State's proposed instructions in this area.

Second, the State argues the Superior Court erred when it submitted FMB's theory of promissory estoppel to the jury. It points out that the doctrine has "traditionally been limited to enforcement of otherwise unenforceable promises which are not supported by consideration." *Klinke v. Famous Recipe Fried Chicken, Inc.,* 94 Wn.2d 255, 261, 616 P.2d 644 (1980). Here, consideration is present. According to the State, FMB's theory of promissory estoppel is based on section 217A of the Restatement (Second) of Contracts (Tent. Draft No. 4, 1968), which provides for enforcement of a bilateral oral agreement within the statute of frauds. Since *Klinke,* and subsequent decisions declined to adopt section 217A, the State maintains that any instruction based thereon was improper. *See also Lige Dickson Co. v. Union Oil Co.,* 96 Wn.2d 291, 635 P.2d 103 (1981) and *Lec-*

---

[2]*National Laundry Co. v. Mayer,* 79 Wash. 212, 140 P. 393 (1914) and *Rosenberg v. Gas Serv. Co.,* 363 S.W.2d 20 (Mo. Ct. App. 1962) are distinguishable. In both of those cases, the rental rate upon exercise of the option was to be readjusted, but there was no promise, as here, to agree to an acceptable rate.

*tus, Inc. v. Rainier Nat'l Bank,* 97 Wn.2d 584, 647 P.2d 1001 (1982). We disagree. Those cases do not necessarily preclude adoption of section 217A.[3]

That section provides:

Enforcement by Virtue of Action in Reliance

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:

(a) the availability and adequacy of other remedies, particularly cancellation and restitution;

(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

(d) the reasonableness of the action or forbearance;

(e) the extent to which the action or forbearance was foreseeable by the promisor.

*Klinke,* at 260. The section's application is limited to circumstances where "injustice can be avoided only by enforcement of the promise." Restatement § 217A. In determining whether the limitation is met in a particular case, the court is guided by the factors set forth in subsection (2) of section 217A. Those factors are substantially fulfilled here. They are:

---

[3]In *Klinke,* at 262, the court refused to adopt section 217A because it was unnecessary to effectuate justice in that particular case. In *Lectus,* at 589–90, the court's refusal to apply Restatement section 217A was based on the fact that the petitioner's reliance on the purported promise was not reasonable. In *Lige Dickson,* at 299–300, the court noted that application of section 217A in the context of the sale of goods would allow parties to circumvent the U.C.C. Thus, the foregoing cases are distinguishable.

*Availability and adequacy of other remedies.* The jury was instructed on other theories of liability, but we do not know which theory it relied upon in reaching its general verdict. We deem this factor less significant in jury cases where the jury, not the judge, determines whether the evidence supports the various theories.

*The definite and substantial character of the action or forbearance.* Evidence exists that FMB proceeded with its building project because it believed DSHS was committed to continuing in its lease.

*The making and terms of the promise are established by clear and convincing evidence.* The evidence was that Mr. Works made a commitment to Dr. Bratrude to lease the space and that G.A. was aware of this commitment by late April and was also aware that FMB was about to begin construction. Instead of unambiguously rejecting the commitment by Mr. Works as unauthorized, G.A.'s Mr. Omlor sent a letter to Mr. LaDouceur which directed FMB to install only the outside walls of the addition until such time as G.A. developed a plan for the interior.

*The reasonableness of the action or forbearance.* Under the foregoing evidence, the jury could have believed FMB justifiably assumed G.A. had ratified Mr. Works' commitment to lease.

*The extent to which the action or forbearance was foreseeable by the promisor.* DSHS should have foreseen that FMB would be injured by reliance on Mr. Omlor's letter of May 14, 1979, to Mr. LaDouceur, if DSHS did not lease the space after it was remodeled.

Based on the above analysis, we hold that application of section 217A of the Restatement (Second) of Contracts is necessary to effectuate justice in this case. Thus, the court properly instructed the jury on the theory of promissory estoppel.

Third, the State asserts the jury's verdict is not sustainable on a quasi contract, restitution theory. It takes the position that it was not benefited. Thus, there is nothing to "restore" to FMB.

"Restitution" is a modern designation for the older

doctrine of "quasi–contract", which is not a true contract, but an obligation created by law when money or property has been placed in one person's possession under such circumstances that in equity and good conscience he ought not to retain it. *Bill v. Gattavara,* 34 Wn.2d 645, 650, 209 P.2d 457 (1949). A person confers a "benefit" upon another if he performs services beneficial to or at the request of the other, or in any way adds to his security or advantage. *Olwell v. Nye & Nissen Co.,* 26 Wn.2d 282, 285, 173 P.2d 652, 169 A.L.R. 139 (1946) (citing Restatement of Restitution § 1(b)).

The State argues that since it never took possession of the additional space and vacated the existing space at the expiration of its lease, it did not receive any benefit from FMB. It further argues the addition was built for the benefit of the medical practice. We disagree. While we were unable to find a Washington case directly on point, we are persuaded by the rationale in *Trollope v. Koerner,* 106 Ariz. 10, 18, 470 P.2d 91, 99 (1970), where the court states:

> a landlord who undertakes to make significant improvements to suit the potential lessee in anticipation of the lease may have a quasi–contractual recovery for the expense of such improvements to the extent that they are or were intended to be exclusively beneficial to the potential lessee.

Here, evidence exists that FMB would not have constructed the addition but would have expanded the medical practice into DSHS's existing space but for the fact it was led to believe DSHS would exercise its option to renew its lease. Hence, the jury could have believed the addition was for the benefit of DSHS. Accordingly, the court did not err when it submitted to the jury FMB's theory of quasi contract or restitution.[4]

Fourth, the State maintains there was insufficient evidence of a promise to support FMB's breach of an express or implied–in–fact contract and promissory estop-

---

[4]The State's assignments of error relating to the measure of damages under this theory are discussed under Issue 6, *infra.*

pel theories. The court instructed the jury on the need for "objective manifestation of mutual intent on the essential terms of the contract." The State's proposed instructions are more specific. They provide that a manifestation of an intent to be bound only upon some further expression of agreement, *i.e.*, a writing, is not sufficient to constitute a promise. While the State's proposed instructions are correct statements of the law as set forth in *Pacific Cascade Corp. v. Nimmer*, 25 Wn. App. 552, 608 P.2d 266 (1980), the instructions as given did not preclude the State from arguing that the parties had no present contractual intent. Accordingly we find no error in the instructions given nor in the court's refusal to give the State's proposed instructions.[5]

Fifth, the State contends there was insufficient evidence that G.A. delegated its contracting authority or ratified the actions of DSHS, and it assigns error to the court's instructions in this area. Under RCW 43.82.010, G.A. has contracting authority for State agencies, which authority it may delegate. Instruction 9 is a correct statement of the statutory authority. Instruction 12 defines ratification as "one's affirmance of a prior unauthorized act which was done on his account but not originally binding on him . . ." This instruction permitted the State to argue its theory of the case, *i.e.*, that G.A. was not apprised of the material facts relating to DSHS's conduct and therefore G.A. could not ratify that conduct. The State's proposed instructions in effect direct a verdict in its favor on the issue of ratification. The record contains sufficient evidence from which the jury could conclude that G.A. ratified DSHS's conduct, most importantly, Mr. Omlor's letter and Mr. Salisbury's representations to Mr. LaDouceur. Accordingly, the court

---

[5]The State also argues that it was precluded from arguing *Nimmer* by instruction 8, which advised the jury that once a "public official, acting within his authority . . . [makes a] commitment . . . the official should not be permitted to revoke that commitment." We disagree. The State could have argued that absent a present intent to contract, its officials never made a commitment to lease the premises offered by FMB.

properly rejected the State's instructions.

Sixth, the State claims the court erred when it (1) admitted evidence of FMB's costs in building the addition, and (2) instructed the jury to consider those costs as an element of damages.

Instruction 16 provided, *inter alia*:

Plaintiff may only be awarded damages based on one of its claims.

The measure of damages for breach of express or implied contract or the claim of promissory estoppel is that the injured party is entitled to . . . be put into as good a position money–wise as the injured party would have been in had the contract been performed.

If you find for the Plaintiff on either of these three claims, you should consider the following items of damage as applicable:

1. Lost rent for the old space.
2. Cost of preparing old space for a new tenant.
3. Lost rent for new space.
4. Cost of improvements made in reliance on the State's actions.

The measure of damages in a quasi–contract situation is the amount which will restore Plaintiff to the position that he was in before the Defendant received the benefit.

If you find for the Plaintiff on this claim you should consider the following items of damages applicable:

1. Lost rent for the old space.
2. Cost of improvements made in reliance on the State's actions.

The State excepted to the instruction, arguing the costs of improvements should not be included as an item of damages for breach of express or implied contract or on the claim of promissory estoppel. In its view, FMB was entitled only to the benefit of its bargain and not to expenses which it would have incurred whether or not there was a breach.

The State further excepted to the portion of the instruction stating the measure of damages for quasi contract is the amount which will restore the plaintiff to the position he was in before the defendant received the benefit. It argued the correct measure is the value of the benefit conferred upon the defendant, not the cost incurred by the

plaintiff in conferring the claimed benefit.

# I
## BREACH OF CONTRACT

Generally, the measure of damages for breach of contract is that amount necessary to put the injured party in as good a position pecuniarily as he would have been in had the contract been performed. This includes all damages that accrue naturally from the breach. *Diedrick v. School Dist. 81,* 87 Wn.2d 598, 610, 555 P.2d 825 (1976). However, damages in certain cases are measured by the injured party's reliance interest. Section 349 of Restatement (Second) of Contracts (1981) provides at page 124:

> *As an alternative* to the measure of damages stated in § 347 [benefit of bargain], the injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed.

(Italics ours.) The illustrations which follow this section involve situations where the injured party could not prove with reasonable certainty what profit he would have made had the contract been performed.

In this case, FMB's lost rents and remodeling costs are losses directly attributable to the State's alleged breach. These costs are capable of proof. FMB may not, in addition, recover its construction expenditures, especially where those expenditures are salvageable by renting the space to someone else. Section 349 of the Restatement, which speaks of reliance damages as an *alternative* mode of recovery, is not applicable here, and that portion of instruction 16 which allowed the jury to consider such damages was error.

# II
## QUASI CONTRACT

Some courts have held an owner who makes expenditures on his property in reliance upon a void or unenforceable lease can recover for the reasonable value of the services rendered and materials furnished. *See* Annot., *Right of Owner To Recover for Work or Material Expended on His*

*Own Real Property in Reliance Upon a Void or Unenforceable Contract for its Rental or Sale,* 64 A.L.R.3d 1191, § 2 at 1192 (1975). "If the expenditures also benefited the plaintiff, that would not relieve the defendant of his obligation to pay which the law casts upon him, although that might be a matter to be considered in reduction of damages." *Minsky's Follies of Fla., Inc. v. Sennes,* 206 F.2d 1, 4 (5th Cir. 1953).

Here, FMB made expenditures in building the addition which it would not have made but for the State's representations. Hence, those expenditures were part of FMB's damages and were properly admitted. Nevertheless, the addition benefits FMB by the rental income it produces. The court's instruction did not advise the jury to consider this benefit as an offset to FMB's damages. The State's exception to the instruction to the effect that damages should be measured by the benefit conferred on the defendant rather than the costs incurred by the plaintiff was sufficient to advise the Superior Court of its error.[6]

Since it is impossible to determine if or how the jury's assessment of damages was affected by the foregoing errors, we reverse and remand for a new trial on the issue of damages alone. On remand, the court shall instruct the jury in accordance with the law as stated in this opinion.

Seventh, the State assigns error to the court's admission of interagency memoranda tending to show individual state employees expected the lease would be renewed. It argues the introduction of memoranda, coupled with the wording of the court's instructions, allowed the jury to consider the parties' subjective intent, contrary to *Everett v. Estate of Sumstad,* 95 Wn.2d 853, 855, 631 P.2d 366 (1981). We disagree. The memoranda were properly admitted because they formed part of a process which was

---

[6]The State also complains that the jury was instructed that it could consider lost rent for the old space in measuring damages under quasi contract. We find no error. Evidence exists that part of the benefit FMB conferred on the State was in continuing to make the old space available for rent instead of using it for expansion itself. In these circumstances, lost rent is a proper measure of the benefit conferred.

ultimately communicated to FMB, or because they were evidence of G.A.'s ratification of the department's conduct.

The State also complains that several of the instructions allowed the jury to consider the parties' subjective intentions, but its exceptions to those instructions were not made on this basis. In any event, a review of the instructions indicates the State's complaint is not well taken. To the contrary, the instructions allowed the State to argue its theory of the case, *i.e.*, that the parties' objective manifestations of intent did not support an intent to contract.

Eighth, the State asserts the court erred when it denied its motion in limine to exclude from the jury patients of the doctors/owners of FMB. Of the 12 jurors, 7 either had a patient relationship with the doctors or had a family member with such a relationship.

RCW 4.44.180 specifies certain relationships between a potential juror and a party from which the law implies bias. In those instances, actual bias need not be shown. They include "Standing in the relation of guardian and ward, attorney and client, master and servant or landlord and tenant, to the adverse party; . . . *or otherwise* . . ." (Italics ours.) RCW 4.44.180(2). We hold the doctor/patient relationship is not included in RCW 4.44.180(2) by virtue of the language "or otherwise". The relationships enumerated in the statute are those in which the potential juror (1) entrusts another with authority to make decisions on his behalf, or (2) has some pecuniary interest which may be affected by a party. The doctor/patient relationship does not fall under either category. Hence the court did not err when it refused to exclude the doctors' patients from the jury panel as a matter of law.

Nor can it be said the court abused its discretion when it determined that exclusion of all such jurors was unnecessary to provide the State a fair forum. A juror's faith in his doctor's medical judgment does not translate into unquestioned faith in the doctor's business judgment, absent specific facts which indicate otherwise. If the State had elicited such facts in voir dire, then it could have challenged the

juror for actual bias, pursuant to RCW 4.44.170(2).[7]

Ninth, the State argues the court abused its discretion when it allowed FMB's expert to testify on the issue of damages. The pertinent facts are that FMB employed the expert in March 1982 and notified the State of his employment at that time. However, it did not supply the State a summary of his proposed testimony until 5 working days before trial. The State contends FMB was under a duty to supply this information pursuant to interrogatories delivered in 1980. It argues the trial court, by allowing it to depose the expert on the evening of the first day of trial, could not cure the prejudice it suffered in preparing its cross examination and rebuttal on such short notice. Since we are remanding the cause for retrial on the issue of damages, we need not address the State's contentions. The State now knows of the expert's testimony, and any earlier alleged violation of the discovery rules by FMB is immaterial.

Tenth, we reject the State's numerous assignments of error relating to the court's rulings denying its proposed instructions. As noted in our analysis of the separate issues, the court's instructions, with the exception of the damages instruction, were supported by the facts and by the law and allowed the State to argue its theory of the case. Under these circumstances, the court's refusal to give the State's proposed instructions was not error. *Cf. Cooper's Mobile Homes, Inc. v. Simmons,* 94 Wn.2d 321, 327, 617 P.2d 415 (1980) (there must be substantial evidence to support a particular theory before court is required to instruct on it); and *Kjellman v. Richards,* 82 Wn.2d 766, 768, 514 P.2d 134 (1973) (court's refusal to give proposed instructions not error where instructions as given permit party to argue its

---

[7]That statute provides:

"Particular causes of challenge are of three kinds:

". . .

"(2) For the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this code as actual bias."

theory of the case).

Finally, we affirm the Superior Court order denying the State's motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The evidence and reasonable inferences therefrom when viewed in a light most favorable to FMB, the nonmoving party, provide substantial evidence in support of the jury verdict. *Cowsert v. Crowley Maritime Corp.,* 101 Wn.2d 402, 405, 680 P.2d 46 (1984).

The judgment of the Superior Court on the issue of the State's liability is affirmed. The judgment awarding FMB damages in the amount of $169,000 is reversed, and the cause is remanded for a new trial on the issue of damages alone in accordance with the holding of this opinion. On retrial, FMB shall (1) elect one of its theories of liability to proceed upon and (2) present only that evidence which is relevant to the measure of damages under the elected theory of liability.

MUNSON, C.J., and THOMPSON, J., concur.

After modification, further reconsideration denied July 16, 1984.

Review granted by Supreme Court November 16, 1984.