[No. 50934-4.   En Banc.   July 3, 1985.]

FAMILY MEDICAL BUILDING, INC., *Respondent,* v. THE
DEPARTMENT OF SOCIAL AND HEALTH SERVICES,
*Petitioner.*

*Kenneth O. Eikenberry, Attorney General,* and *William L. Williams, Assistant,* for petitioner.

*Reed & Giesa, P.S.,* by *Michael J. Casey* and *Richard B. Price,* for respondent.

DORE, J.—The State of Washington appeals a Court of Appeals decision which affirmed a judgment against the State for breach of a lease agreement with Family Medical Building, Inc. (FMB).

We affirm the judgment holding the State liable and remand to the trial court for a proper determination of damages in accordance with the provisions of this decision.

## FACTS

FMB owns a two–story building in Omak, Washington. The top floor is occupied by a medical clinic in which the doctor/owners of FMB have their offices. The lower floor was leased to the Department of Social and Health Services (DSHS) from 1970 to 1980 pursuant to a 10–year lease negotiated by the Department of General Administration (GA). GA is the State's statutory leasing agent under RCW 43.82.010. The 1970 lease contained an option for a 5–year renewal, which provided that: "This lease may, at the option of the Lessee, be renewed for five years at a monthly rental to be negotiated."

In November 1977, FMB's president, Dr. Amos Bratrude, sent a letter to Greg Works, DSHS' Omak Community Service Office administrator, to determine whether DSHS would renew the lease. Works forwarded a copy of the letter to Bernie Nelson, DSHS' regional administrator, who referred the inquiry to GA. GA responded to FMB through D. E. Salisbury, GA's chief leasing agent, who wrote FMB that he expected negotiations would commence the follow-

ing spring.

Bratrude testified that, prior to the fall of 1978, meetings took place with staff from DSHS, and that remodeling of the existing space and a possible need by DSHS of additional space were discussed.

In October 1978, Bratrude again wrote Works regarding the renewal. Bratrude advised that the medical clinic was growing and that FMB would be deciding whether to expand the building, if DSHS renewed the lease. Bratrude also indicated that the clinic would take over the first floor if DSHS did not renew. Works responded that he discussed the situation with Nelson, who was referring the matter through channels to DSHS and GA. Bratrude testified that, in a phone conversation in January 1979, Works stated that DSHS would like to take over the new space which FMB proposed to build and that he had a commitment from all his superiors that this would be permitted. Bratrude memorialized this conversation. Bratrude testified that he understood DSHS had already decided it would stay in the existing space.

Following this phone conversation, FMB sought financing for expanding the building, planned for remodeling and expanding the existing building, and began construction in May 1979. Bratrude testified that DSHS was involved in the planning and that FMB's builder consulted with Works to meet DSHS' needs. In April 1979, Bratrude received a letter from Works enclosing a sketch of DSHS' proposals. Also in April 1979, a representative of GA's planning department made an on–site visit to view construction and obtain plans to take to Olympia.

Problems surfaced following this visit. In May 1979, Otto Omlor, a real estate specialist employed by GA, wrote FMB's business manager, Joe LaDouceur (incorrectly addressed as Joe Lassiter). In that letter, Omlor (1) indicated no knowledge of negotiations between FMB and the local DSHS officials before April 1979; (2) requested a copy of the phone memo made by Bratrude; (3) requested that the interior of the addition be left bare until GA had an

approved plan drawn showing what DSHS wanted; and (4) indicated any further negotiations would be handled by GA. In August 1979, DSHS informed GA that DSHS wished "to exercise the available 5–year renewal option if a satisfactory lease agreement can be negotiated for the approximately 1800 square feet expansion space." GA, acting through Salisbury, advised FMB's business manager, LaDouceur, of this request. Salisbury wrote, in a memo to Omlor, that he told "Lassiter" (LaDouceur) "we were firm unless his lease demands were unacceptable."

In December 1979, after construction was completed, DSHS advised FMB it would not continue the lease. DSHS then moved into other newly constructed premises. FMB responded with this lawsuit.

At trial, FMB presented four theories of liability on the part of the State—breach of an express contract, breach of an implied–in–fact contract, promissory estoppel, and quasi contract. Damages evidence presented included lost rents and construction costs. The jury returned a general unsegregated verdict in favor of FMB of $169,000. The primary issues on appeal are whether there was an enforceable promise under the statute of frauds and, if not, whether the State is liable under a quasi contract or promissory estoppel theory.

### STATUTE OF FRAUDS

■ There is no dispute that an agreement to lease for more than 1 year is within the statute of frauds. RCW 19.36.010; RCW 64.04.010. To satisfy the statute, written memoranda must disclose the subject matter of the contract, the parties, the promise, the terms and conditions, and (in some but not all jurisdictions) the price or consideration. *Bharat Overseas Ltd. v. Dulien Steel Prods., Inc.*, 51 Wn.2d 685, 321 P.2d 266 (1958). Liability cannot be imposed if it is necessary to use parol evidence to establish any material element of the undertaking. *Smith v. Twohy*, 70 Wn.2d 721, 425 P.2d 12 (1967).

The Court of Appeals found three writings satisfied the

statute in this case: (1) The renewal option clause in the 1970 lease; (2) the August 1979 "letter from DSHS to GA requesting renewal 'if a satisfactory lease agreement can be negotiated for the approximately 1800 square feet expansion space'"; and (3) Salisbury's memo to Omlor that he had advised LaDouceur of that request and that GA was firm unless the lease demands were unacceptable. *Family Med. Bldg., Inc. v. Department of Social & Health Servs.,* 37 Wn. App. 662, 666–67, 684 P.2d 77 (1984). The court found the material elements of the agreement to be: (1) subject matter—the property described in the original lease plus the 1,800 square feet expansion space; (2) parties—as in the original lease; (3) promise—that the State would lease the described subject matter; (4) term—5 years; and (5) price or consideration—an acceptable rate to be negotiated and determined in good faith. 37 Wn. App. at 667.

The State's principal challenge to this reasoning is to the adequacy of the rental price. The State's position appears to be supported by an early case decided by this court. In *National Laundry Co. v. Mayer,* 79 Wash. 212, 215–16, 140 P. 393 (1914), this court addressed the question of whether part performance of an original lease could satisfy the statute of frauds relative to a renewal option. This court noted that, where a renewal option clause provided that "rentals" were to be "adjusted," it would be necessary for the minds of the parties to meet on a new contract. In the original lease, there was no formula or rule for determining a rental rate. Thus, this court concluded that the renewal option failed to satisfy the statute of frauds.

The Court of Appeals distinguished *National Laundry,* because in that case there was "no promise, as here, to agree to an acceptable rate." 37 Wn. App. at 667 n.2. An additional distinguishing feature of *National Laundry* is that the part performance which validated the lease for the initial leasehold period could not .operate in favor of the option of 5 additional years. *National Laundry,* at 216. *See also Friedl v. Benson,* 25 Wn. App. 381, 609 P.2d 449 (1980) (part performance sufficient to establish initial lease

insufficient to validate option).

■■ Contrary to the position taken by the State, this court has held in numerous decisions that similar rental price fixing clauses in lease options are valid and enforceable. In *Diettrich v. J.J. Newberry Co.*, 172 Wash. 18, 20, 19 P.2d 115 (1933), this court held that it "is not the law of this state" that lease options with rental to be agreed upon provisions are violative of the statute of frauds. The phrases "reasonable rent," "rental acceptable to the lessors," "such rental as may then be agreed upon," "subject to the consent of the lessors," and "rental satisfactory to both lessor and lessee," have all been held valid and enforceable and not violative of the statute of frauds.[1]

This line of authority strongly supports the Court of Appeals finding that "a monthly rental to be negotiated" satisfies the statute of frauds requirement of a written memorandum establishing price or consideration for the lease option. The record indicates that the rental price for renewal including the newly expanded space was to be set at $6.50 a square foot, excluding utilities or janitorial services. For purposes of this appeal from the denial of a judgment notwithstanding the verdict, we view the evidence and the inferences therefrom in the light most favorable to FMB, the nonmoving party. *Cowsert v. Crowley Maritime Corp.*, 101 Wn.2d 402, 405, 680 P.2d 46 (1984). There is sufficient evidence in the record to support the jury finding that the State entered into an express contract to renew the existing space and lease the additional space from FMB for a period of 5 years at $6.50 a square foot.

---

[1]*Murray v. Odman*, 1 Wn.2d 481, 96 P.2d 489 (1939) ("reasonable"); *Diettrich v. J.J. Newberry Co.*, 172 Wash. 18, 19 P.2d 115 (1933) ("acceptable to lessors"); *Young v. Nelson*, 121 Wash. 285, 209 P. 515, 30 A.L.R. 568 (1922) ("as may then be agreed upon"); *Blume v. Bohanna*, 38 Wn.2d 199, 228 P.2d 146 (1951) ("consent of the lessor"); *Anderson v. Frye & Bruhn*, 69 Wash. 89, 124 P. 499 (1912) ("rental satisfactory to both lessor and lessee"). *See also* Stoebuck, *The Law Between Landlord and Tenant in Washington*, 49 Wash. L. Rev. 1013, 1039–41 (1974).

ENFORCEMENT BY VIRTUE OF ACTION
IN RELIANCE

In addition to finding sufficient writings, the Court of Appeals adopted Restatement (Second) of Contracts § 217A (Tent. Drafts Nos. 1–7, 1973). Section 217A (renumbered § 139 in the final draft) provides:

Enforcement by Virtue of Action in Reliance

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:

(a) the availability and adequacy of other remedies, particularly cancellation and restitution;

(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

(d) the reasonableness of the action or forbearance;

(e) the extent to which the action or forbearance was foreseeable by the promisor.

This court has discussed this section in several recent cases, but has refused to adopt it. *See Klinke v. Famous Recipe Fried Chicken, Inc.,* 94 Wn.2d 255, 616 P.2d 644 (1980); *Lige Dickson Co. v. Union Oil Co.,* 96 Wn.2d 291, 635 P.2d 103 (1981); *Lectus, Inc. v. Rainier Nat'l Bank,* 97 Wn.2d 584, 647 P.2d 1001 (1982). In *Klinke,* this court refused to adopt section 217A because it was unnecessary to effectuate justice in that particular case.

The unforeseen application of section 217A to areas of law outside the scope of the facts of this case convinces us that it would be unwise to adopt that section now unless necessary to effectuate justice. That is not mandated by the facts of this case.

*Klinke,* at 262. Because we find that the parties entered into an express contract, it is unnecessary to adopt the Restatement (Second) of Contracts § 139 in the instant action. We again leave that determination for an appropriate case.

## QUASI CONTRACT

The Court of Appeals also held that FMB was entitled to recovery on a quasi contract theory for costs and lost rents. Quasi contracts arise from an implied legal duty or obligation, and are not based on a contract between the parties, or any contract agreement. *Chandler v. Washington Toll Bridge Auth.,* 17 Wn.2d 591, 137 P.2d 97 (1943). As a general rule, recovery in quasi contract is based on the prevention of unjust enrichment. The doctrine is, therefore, applied when money or property has been placed in one person's possession such that in equity and good conscience he should not retain it. *Heaton v. Imus,* 93 Wn.2d 249, 608 P.2d 631 (1980).

Here, the Court of Appeals was persuaded by an Arizona decision:

> [A] landlord who undertakes to make significant im—provements to suit the potential lessee in anticipation of the lease may have a quasi–contractual recovery for the expense of such improvements to the extent that they are or were intended to be exclusively beneficial to the potential lessee.

*Trollope v. Koerner,* 106 Ariz. 10, 18, 470 P.2d 91 (1970). *Accord, Minsky's Follies of Fla., Inc. v. Sennes,* 206 F.2d 1 (5th Cir. 1953).

Although we are not in disagreement with the opinion of the Arizona court, we find it unnecessary to apply such a rule to this action. In upholding the finding of liability on the theory of express contract, it is unnecessary to reach the question of quasi contract recovery.

## RETRIAL ON DAMAGES

The Court of Appeals remanded the case for a new trial on the issue of damages. There is no dispute that the

instructions to the jury on damages were erroneous. The trial court incorrectly instructed as to both reliance and benefit of the bargain damages under the contract theory. The trial court's damage instruction 16 provided:

Plaintiff may only be awarded damages based on one of its claims.

The measure of damages for breach of express or implied contract or the claim of promissory estoppel is that the injured party is entitled to . . . be put into as good a position money–wise as the injured party would have been in had the contract been performed.

If you find for the Plaintiff on either of these three claims, you should consider the following items of damage as applicable:

1. Lost rent for the old space.

2. Cost of preparing old space for a new tenant.

3. Lost rent for new space.

4. Cost of improvements made in reliance on the State's actions.

The measure of damages in a quasi–contract situation is the amount which will restore Plaintiff to the position that he was in before the Defendant received the benefit.

If you find for the Plaintiff on this claim you should consider the following items of damages applicable:

1. Lost rent for the old space.

2. Cost of improvements made in reliance on the State's actions.

The problem with the damage instruction was that it could have allowed the jury to consider evidence of the cost of construction as damages for cost of improvements made in reliance on FMB's breach of contract theory. The Court of Appeals ruled, as to the breach of contract claim, that because FMB had proved benefit of the bargain damages (*i.e.*, lost rents and remodeling), FMB could not, in addition, recover its reliance interest construction expenditures, "especially where those expenditures are salvageable by renting the space to someone else." 37 Wn. App. at 673.

■ Generally, the measure of a lessor's damages resulting from a lessee's breach of a lease is the difference in the value of the property independent of the lease. *Washington Trust Bank v. Circle K Corp.*, 15 Wn. App. 89, 93, 546 P.2d

1249, *review denied,* 87 Wn.2d 1006 (1976). The same measure of damages applies when the lessee's repudiation is an anticipatory breach of a lease renewal or option. *See Szabo Assocs. v. Peachtree–Piedmont Assocs.,* 141 Ga. App. 654, 234 S.E.2d 119 (1977); *Look v. Werlin,* 590 S.W.2d 526 (Tex. Civ. App. 1979). In the event the lessor relets the premises, he is entitled to hold the lessee liable for the difference, if any, in the rent contracted for and that actually recovered. *See Exeter Co. v. Samuel Martin, Ltd.,* 5 Wn.2d 244, 105 P.2d 83 (1940); *Martin v. Siegley,* 123 Wash. 683, 212 P. 1057 (1923).

In the instant action, it is apparent that FMB made reasonable efforts to mitigate damages and was successful in reletting the premises. Under the above analysis, FMB is entitled to recover the contract rental for the period reasonably necessary to rerent the premises plus the difference, if any, between the new and the original rents for the 5–year lease term.

Additional damages which a lessor may recover for breach of a lease may properly include consequential damages which flow from the breach and which could reasonably have been anticipated by the parties. The amount of damages should reflect what is required to place the lessor in the same financial position he would have enjoyed in the absence of the breach. *Olson v. Scholes,* 17 Wn. App. 383, 391–92, 563 P.2d 1275 (1977).

In the instant action, the record indicates that the premises were specifically designed and improved for the exclusive benefit of the State and necessarily had to be remodeled in order that they be marketable to a new tenant. To the extent these costs were expenses of mitigation and not capital improvements for the benefit of the new tenant, they are recoverable. *See Pioneer Trust & Sav. Bank v. Zonta,* 96 Ill. App. 3d 339, 421 N.E.2d 239 (1981).

Finally, the State contends that jurors were improperly paneled, that there was insufficient evidence of a promise by the State, that there was insufficient evidence that the State's employees' actions were within their authority, and

that the Court of Appeals erred in awarding costs on appeal to FMB. None of these claims have merit.

CONCLUSION

The judgment of the trial court on liability is affirmed on the basis of an express contract. The judgment of liability on all other theories is reversed as well as the judgment awarding FMB damages in the amount of $169,000. The case is remanded for a new trial on the issue of damages alone to be determined for breach of express contract.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.